[No. 6,771.—Department One.]

## JOHN CALLAHAN *v.* G. C. STANLEY.

EVIDENCE — USAGE — STUBBLE — TECHNICAL TERM — CONSTRUCTION OF CONTRACT.—If words in a contract have a special meaning given to them by usage, the meaning should be followed. So, *held*, in a case where the term "stubble" was used in a lease, and evidence was offered to show that by the custom of the country in the locality of the premises, the term included grain remaining uncut after the period of harvest.

APPEAL from a judgment for the plaintiff, and an order denying a new trial, in the Third District Court for Alameda County. McKEE, J.

*E. J. Pringle*, for Appellant.

The Court erred in excluding evidence as to the meaning of the word "stubble."

In *Jenny Lind Co.* v. *Bowers*, 11 Cal. 194, evidence of usage was held admissible to show that the word "north" was used by the parties in a sense different from its ordinary one, and Field, J., said:

"It was not to contradict or vary the meaning of the term 'north' that the evidence was admitted, but to ascertain the sense in which it was used by the parties." So in *Reamer* v. *Nesmith*, 34 Cal. 627, it was held that parol evidence was admissible to show the sense in which the parties used the phrase "running back into the hill"; and Sanderson, J., delivering the opinion, said:

"It may be in use among miners for the purpose of describing their mining claims, and may have among them a certain and definite meaning. If so, that meaning should be ascertained, and full force given to it by the Court in construing the deed. * * * It may have a definite and certain meaning among miners, like mercantile terms among merchants, which are not intelligible to others. Mercantile terms, abbreviations, words in a foreign language, technical and scientific terms, not generally understood, may be explained by parol evidence, if otherwise unintelligible to the Court. So if the terms or expressions are peculiar to a particular business or calling, they do not fall within the general rule that patent ambiguities cannot be explained by parol."

*Curtis H. Lindley*, for Respondent.

The evidence offered by respondent was for the purpose of showing that the term " stubble," as used in the agreement, meant, by the custom of the country, something not embraced in the ordinary acceptation of the term.

It will be noted that the plaintiff did not offer to prove that the term " stubble " was used and understood by the parties to the lease to have any " local, technical, or otherwise peculiar signification." The offer was simply to invoke a so-called " custom of the country" to construe a contract in writing, the terms of which are presumed to have been used in their primary and general acceptation.

Before any evidence could, under any circumstances, be admissible to rebut this presumption, it was not only necessary to offer to prove that the word " stubble " had a local or technical signification, but that the word was used and understood by the parties to the instrument in such local or technical sense. (Code Civ. Proc. § 1861.)

Custom is not admissible in evidence to vary the plain meaning of a written contract. (*Corwin* v. *Patch*, 4 Cal. 204; *Polhemus* v. *Heiman*, 50 id. 438; 2 Parsons on Contracts, § 546, note x; 2 Greenl. on Ev. § 251, and note 4.)

The term " stubble " is certainly neither obscure not indeterminate. Webster defines it to mean:

" The stumps of wheat, rye, barley, oats, or buckwheat left in the ground; the part of the stalk left by the scythe or sickle."

Nor is it peculiar to one class of persons.

McKEE, J.:

This was an action to recover damages for unlawfully preventing the plaintiff from pasturing his sheep upon certain stubble, to wit: the growth of wheat, oats, and barley remaining after harvest time upon the cultivated and uncultivated portions of a certain tract of land which the assignor of the plaintiff had leased to the defendant.

It appears that on the 28th of October, 1876, one Aurrecochea leased to the defendant for the farming season to end

October 1st, 1877, about eight hundred and forty acres of land
in the County of Alameda.   By the terms of the lease, the de-
fendant covenanted as follows:   " That he will till and cultivate
said premises in a good, farmer-like manner.   That he will, in
due and proper seasons, sow said premises to wheat, oats, or
barley, or proportions of each, and will harvest the same at his
own cost, charges, and expense, as soon as the same is suitable
for harvesting.   That he will immediately upon harvesting the
same, thresh, clean, and sack, in good, new, merchantable sacks,
all the grain of every description raised on said premises, and
as threshed and sacked shall be divided in the field and piled
separately.   One-fourth of which shall be delivered to Aurre-
cochea as and for the yearly rental.   And all the hay thereon
raised on land not plowed by the party of the second part shall
belong to the party of the first part; and all hay cut on said.
land that may be plowed and cultivated by the party of the
second part shall be divided in the field equally between the
parties hereto, to be cut and stacked by the party of the second
part.   All the stubble on said land to belong exclusively to the
party of the first part "—the landlord.

Defendant sowed the entire premises in grain, as provided
by the lease, but cut only about two hundred acres, leaving the
remainder uncut, because, in consequence of the extreme dry-
ness of the season, the crop was of scanty growth, and although
there was some little grain in it, yet there was not enough to
make it worth harvesting.   So, instead of cutting it, he turned
in upon it his sheep, and pastured them there during the
months of August and September, 1877; and in the month of
August, when the plaintiff to whom Aurrecochea had assigned
the stubble drove about 2,000 sheep upon the land for pastur-
age, he drove them away and prevented the plaintiff from using
it for that purpose, upon the ground that the uncut grain was
not stubble, to which the landlord, or the plaintiff as his as-
signee, was entitled under the lease.   And that was the ques-
tion at issue.

In order to prove that it was stubble, the plaintiff, on the
trial of the case, offered to prove that, by the custom of the
country in the locality of the premises, the word "stubble,"
used in the agreement, included and designated whatever is left

on the ground after the harvest time. The defendant objected to any such proof as incompetent, and the Court sustained the objection, and refused to allow plaintiff to introduce such proof, to which ruling plaintiff then and there excepted.

We think that was error. It was the duty of the Court to construe the contract in such a way as to render it operative and effectual to carry out the purpose of the parties, as expressed in the language and terms which they used. As a general rule, the words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; but if they are used in a technical sense, they should be interpreted as usually understood by persons in the profession or business to which they relate; or if they have a special meaning given to them by usage, the meaning should be followed. (§§ 1644, 1645, Civ. Code.) In such a case, evidence explanatory of the words is admissible, not for the purpose of adding to, or qualifying, or contradicting the contract, but for the purpose of ascertaining it by expounding the language, and so enabling the Court to interpret it according to the actual intention of the parties, and the law and usage of the place where it is to be performed. (§§ 1636, 1646, Civ. Code.)

If there was an existing usage among farmers as to the meaning of the word " stubble," when this contract was made, it must be inferred that the contracting parties, being farmers, contracted with reference to it, and that they used the word in the broader meaning which was given to it by that usage, and not in the ordinary or popular sense. Evidence of such usage and meaning was, therefore, admissible to define and explain the peculiar or local meaning of the word as it was used in the contract, and the Court below should have overruled the objection to the offer made by the plaintiff.

Judgment and order reversed, and cause remanded to the Superior Court of Alameda County for a new trial.

Ross, J., and McKINSTRY, J., concurred.