## BERRY et al. v. KOWALSKY.*

### Nos. 13,116, 13,309; July 22, 1891.

27 Pac. 286.

Option.—A Complaint for the Breach of the Following Contract, "Received of A. Gerberding one hundred dollars, for which I allow him the privilege of delivering me, at any time within thirty days from date, five hundred tons S/87 wheat, at one dollar and eighty cents per cental," signed, "E. H. K.," which is set out in haec verba, is sufficient on demurrer, although it does not allege that defendant executed the same.

Option.—The Fact That the Abbreviation* "S/87" is used as descriptive of the wheat to be delivered under the contract does not make the complaint unintelligible and uncertain, as oral evidence may be introduced to explain the customary meaning, and need not be pleaded.

Option.—Where the Contract Sued upon was Written on a Sheet, with rules of the produce exchange printed at the head, and plaintiff testified that it was no part of the contract, and that the contract had no connection with the exchange, it was error to exclude evidence tending to show that it was an exchange contract, as well as the exchange rules governing such contracts.

APPEAL from Superior Court, City and County of San Francisco; F. W. Lawler, Judge.

Action by F. G. Berry and John F. English against E. H. Kowalsky for breach of contract. Judgment for plaintiffs. Defendant appeals. Reversed.

Thornton & Merrybach for appellant; Whittemore & Sears for respondents.

VANCLIEF, C.—There are two appeals in this case, upon distinct records. No. 13,116 is from the final judgment, and upon the judgment-roll. No. 13,309 is from an order denying defendant's motion for a new trial, upon a record consisting of a statement of the case in addition to the judgment-roll. On the appeal from the judgment it is contended that the

*For subsequent opinion in bank, see 95 Cal. 134, 29 Am. St. Rep. 101, 30 Pac. 202.

court erred in overruling the defendant's demurrer to the
complaint, and that the findings do not support the judgment.
On the appeal from the order the errors assigned are errors
in law occurring at the trial.   The following is a copy of the
verified complaint: ''The said plaintiffs complain of the said
defendant, and for cause of action herein allege: That on the
15th day of July, 1887, the plaintiffs paid to defendant the
sum of $100 for the right and privilege of delivering to de-
fendant five hundred tons of wheat at any time within thirty
days from said fifteenth day of July, at the rate of one dollar
and eighty cents per cental.   Said contract is in the following
words and figures, to wit:

      '' 'San Francisco, July 15, 1887.

'' 'Received of A. Gerberding one hundred dollars, for which
I allow him the privilege of delivering me at any time, within
thirty days from date, five hundred tons S/87 wheat, at one
dollar and eighty cents per cental.

      '' 'E. H. KOWALSKY.'

''That said contract was made in the name of A. Gerberd-
ing, as the agent of plaintiffs, but the plaintiffs were and still
are the real parties in interest; that said plaintiffs, on the
thirteenth day of August, 1887, in the said city and county
of San Francisco, at the office of said defendant, tendered the
delivery of said five hundred tons of wheat to said defendant,
and performed all the conditions on their part under said
contract.   Said plaintiffs then and there demanded from said
defendant the sum of eighteen thousand dollars, payment as
the price of said wheat according to said contract; that said
defendant denied having purchased said wheat, and refused
to pay for said wheat, to the damage of plaintiffs in the sum
of eighteen thousand dollars; that said plaintiffs made said
contract with said defendant in good faith, for the purpose
of delivering said wheat to said defendant, and had said wheat
in warehouse in San Francisco for the purpose of delivering
the same on said contract to said defendant.   Wherefore
plaintiffs pray for judgment against said defendant in the
sum of eighteen thousand dollars, interest and costs of suit,
and for such other and further relief as justice may require.

     ''WHITTEMORE & SEARS,
      ''Att'ys for Plaintiff.''

This complaint was demurred to on the ground (1) that it is ambiguous, unintelligible and uncertain, in that "no meaning is alleged of the words 'S/78' in the contract"; and (2) that the complaint does not state facts sufficient to constitute a cause of action. The alleged contract is not, does not purport to be, and is not alleged to be, an agreement "to sell and buy," nor an agreement on the part of the plaintiffs to sell wheat at any time. It imposes upon the plaintiffs no obligation to be performed by them. If it be a valid contract, it is an agreement by the defendant, for an executed consideration, to buy and accept delivery of, from the plaintiffs, a certain quantity of wheat, within a certain period of time, for a certain price, at the option of the plaintiffs, and to pay plaintiffs the price therefor: Civ. Code, secs. 1726–1730; Wharton on Contracts, sec. 453a. Nor is the action brought to recover the price or value of wheat "sold and delivered," or "bargained and sold," but to recover damages for defendant's breach of his alleged conditional agreement to buy the wheat at plaintiffs' option.

1. As against a general demurrer, I think the facts expressed and implied in the complaint barely constitute a cause of action. The written instrument set out purports to have been signed by the defendant, and it is designated as the contract for the breach of which (afterward alleged) the action is brought. This implies that it was executed by the defendant. The instrument admits the receipt of a consideration of $100, for which defendant "allows" (gives) plaintiffs the "privilege" (option) to deliver (or not) to defendant, within thirty days, 500 tons of wheat, "at [the price of] one dollar and eighty cents per cental." The giving of the privilege to deliver the wheat to defendant at a certain price implies that he will receive it and pay for it the price specified. The foregoing, I think, is the only admissible construction of the instrument as pleaded. If it will not bear this construction, it can have no effect as an agreement. As a breach of this agreement, it is alleged that, within thirty days, the plaintiffs tendered a delivery of the wheat, and demanded payment of the price, thus creating the condition upon which defendant's liability depended; and that defendant refused to pay the price. This shows a breach of the agreement, for

which the plaintiffs were entitled to such damages as proximately resulted therefrom.

2. The grounds of the special demurrer, that the "complaint is ambiguous, unintelligible and uncertain," do not appear on the face of the complaint. The words or abbreviations "S/87" appear to have been used as descriptive of the wheat, and to require oral evidence of their customary meaning in the business of dealing in wheat; but such oral evidence need not be stated in a pleading in which the written agreement is set out in haec verba. The meaning may be proved on the trial for the purpose of enabling the court to interpret the words: Civ. Code, secs. 1636, 1644–1646; Callahan v. Stanley, 57 Cal. 476. Had it appeared on the face of the complaint that, even with the aid of parol evidence, the words "S/87" as used were meaningless, and that a complete contract was expressed without them, they might have been disregarded as surplusage (Harrison v. McCormick, 89 Cal. 327, 23 Am. St. Rep. 469, 26 Pac. 830); and certainly a complete contract is expressed without them. But it does not appear that, read in the light of admissible oral evidence, they are meaningless or unintelligible. So read, they may have a certain unambiguous meaning descriptive of the subject of the contract. Therefore the court could not see, on the trial of the demurrer, that those words were unintelligible, or that their use rendered the complaint ambiguous or uncertain.

3. The execution of the contract, and the breach thereof, as alleged, are found as facts. Therefore, the findings support the judgment.

4. The contract, as set out in the complaint, being denied, it appears by the statement on motion for new trial that, to prove the contract, plaintiffs offered in evidence a paper on which was written the alleged contract as pleaded. Above the manuscript, and on the same paper, was printed matter composed of what was admitted to be extracts from the rules of the Produce Exchange and Call Board of San Francisco. The paper was objected to by counsel for defendant on the ground that it varied from the contract as pleaded, the printed matter not being set out in the complaint. Thereupon, for the apparent purpose of proving that the printed matter was no part of the contract, and that the contract was entirely independent of the printed heading, the plaintiff Berry, on

behalf of plaintiffs, testified to the circumstances under which the contract was made, and to what he claimed to have been all the verbal negotiations—all that was said by each party— preceding and leading up to the signing of the written contract, which, he said, was drawn by him according to the verbal understanding. He was further permitted to testify, against the objection of defendant's counsel, that the "contract was drawn independent of any connection with what is known as the 'Produce Exchange.' . . . . I was not figuring on the contract on the board. It was business outside. . . . . I never read the printed matter on the top of the contract. It had nothing whatever to do with the contract. It is the written portion of this piece of paper that constitutes the entire contract between myself and the defendant." F. J. Bonney, a witness for the defendant, testified that he was a farmer, and was a member of the Produce Exchange and Call Board on or about July 15, 1887, and was somewhat familiar with the rules thereof, and that he was present when the contract in suit was made, and heard the preliminary talk between the parties, but was not present when defendant signed the contract. Thereupon defendant's counsel asked the witness the following questions, each of which was objected to on the ground that the effect of the answer thereto would be to vary the written contract; and the objection to each question was sustained by the court, defendant duly excepting: "Question. Was there any reference had in the conversation between these parties to what was known as the 'Call Board Contract'? Q. Was anything said about the contract which was to be entered into between the parties being governed or to be complied with or performed under the rules of the San Francisco Produce Exchange and Call Board? Q. Was the term 'board contract' used in reference to the contract proposed to be executed by them in regard to the dealing in wheat upon which they were entering?" The defendant's counsel also offered in evidence all the rules and regulations of the Produce and Exchange Call Board; but, upon objection by plaintiffs' counsel, they were excluded by the court. It appeared that the plaintiff English and Gerberding (in whose name the contract was made) were members of the exchange board at the date of the contract. The defendant, at the same time, owned a seat in the board, but was not then occupying it,

having leased it temporarily to another person. The plaintiff Berry had formerly been a member of the board. As to whether, under the facts and circumstances disclosed by the evidence, the contract could properly be considered a "board contract," and as to what extent, if at all, it was governed or affected by the rules and customs of the board, the testimony was conflicting. Without deciding whether the testimony of Berry on the part of the plaintiffs was properly admitted or not, I think after it was admitted the proffered testimony of Bonney, and the rules of the exchange board on the part of defendant, should also have been admitted. The testimony of Berry may have influenced the decision of the court to the prejudice of the defendant, and it does not appear that it did not. Had the testimony of Bonney and the rules of the board been admitted, they might have even more than neutralized the effect of Berry's testimony. It was not questioned by either party that the words "S/87" in the contract were to be interpreted by reference to the rules and customs of the produce exchange board. Each party, without objection, introduced expert testimony as to the effect of the rules on the meaning of those words; and it is, at least, possible that the contract may have been otherwise qualified by them. Whether it was so or not could not have been determined without a knowledge of those rules and customs, together with a knowledge of the circumstances under which the contract was made. After the plaintiffs had been permitted to testify as to those circumstances, and that the contract was independent of the rules of the board, the proffered evidence on the part of the defendant as to the same matters should have been admitted. I think the judgment and order should be reversed and a new trial granted.

We concur: Belcher, C. C.; Fitzgerald, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed and a new trial granted.

DE HAVEN, J.—I concur in the judgment upon the ground last discussed in the opinion of Commissioner Vanclief. Upon the other points I express no opinion.