[Nos. 13116, 13309. In Bank. — June 18, 1892.]

F. G. BERRY ET AL., RESPONDENTS, *v.* E. H. KO-
WALSKY, APPELLANT.

OPTION FOR SALE OF WHEAT— ACTION FOR BREACH — PLEADING — DEMUR-
RER. — A complaint alleging that the defendant executed a contract
with the plaintiffs, setting out a copy of the contract, which acknowl-
edged the receipt of a consideration· of one hundred dollars, for which
the defendant allowed the agent of the plaintiffs the " privilege " to de-
liver to the defendant, within thirty days, five hundred tons of S/87
wheat, "at one dollar and eighty cents per cental "; and which further
alleges that within thirty days the plaintiffs tendered a delivery of the
wheat and demanded payment of the price, which the defendant refused
to pay, — states a cause of action for the breach of an alleged conditional
agreement to buy the wheat at plaintiffs' option, and is sufficient, as
against a general demurrer.

ID. — CONTRACT PLEADED IN HÆC VERBA — MEANING OF WORDS OR ABBRE-
VIATIONS — EVIDENCE — PLEADING — SPECIAL DEMURRER. — Where a
written agreement is set out in full in a pleading, the meaning of words
or abbreviations therein may be proved on the trial, for the purpose of
enabling the court to interpret the words, and the oral evidence as to

their meaning need not be stated in the pleading, nor do abbreviations contained in the contract render the pleading liable to special demurrer.

ID. — SURPLUSAGE. — Where a complete contract is expressed without abbreviations used therein, they may be disregarded as surplusage, if they are meaningless.

ID. — DESCRIPTION OF WHEAT — ABBREVIATIONS — SPECIAL DEMURRER. — The words or abbreviations, "S/87 wheat," cannot be said, upon a special demurrer to the pleading, to be unintelligble or meaningless, nor can it be said that their use renders the pleading ambiguous or uncertain.

ID. — EVIDENCE — MEANING OF ABBREVIATIONS — PRINTED MATTER — EXPLANATION OF CONTRACT — RULES OF BOARD. — Where printed matter, not described in the complaint, composed of extracts from the rules of the Produce Exchange and Call Board of San Francisco, appeared above the written contract pleaded, and it was testified by some of the witnesses that the phrase "S/87 wheat," used in the written contract, meant that the seller was to have the season of 1887 in which to complete his contract, and that the wheat should be "number one white wheat," and there was also testimony that the phrase meant that the wheat was not to be delivered, but that the seller was simply to produce "call-board contracts" for the wheat, evidence should be admitted to show whether the printed matter above the manuscript was a part of the contract, or whether it should be considered as a "board contract," or whether the phrase had any other meaning than that given to it by such board, and what that meaning is, and also to show what are the rules and regulations of the stock and exchange board, and it is error to exclude such evidence.

APPEALS from a judgment of the Superior Court of the city and county of San Francisco from an order denying a new trial.

The facts are stated in the opinion of the court.

*Crittenden Thornton,* and *F. H. Merzbach,* for Appellant.

*D. H. Whittemore,* and *Whittemore & Sears,* for Respondents.

The COURT. — "There are two appeals in this case, upon distinct records. No. 13116 is from the final judgment, and upon the judgment roll. No. 13309 is from an order denying defendant's motion for a new trial, upon a record consisting of a statement of the case in addition to the judgment roll.

"On the appeal from the judgment, it is contended that the court erred in overruling the defendant's de-

murrer to the complaint, and that the findings do not support the judgment. On the appeal from the order, the errors assigned are errors of law occurring at the trial.

"The following is a copy of the verified complaint: —

"'The said plaintiffs complain of the said defendant, and for cause of action herein allege: —

"'That on the fifteenth day of July, 1887, the plaintiffs paid to defendant the sum of one hundred dollars for the right and privilege of delivering to defendant five hundred tons of wheat at any time within thirty days from said fifteenth day of July, at the rate of one dollar and eighty cents per cental; said contract is in the following words and figures, to wit: —

"'SAN FRANCISCO, July 15, 1887.

"'Received of A. Gerberding one hundred dollars, for which I allow him the privilege of delivering me at any time within thirty days from date five hundred tons S/87 wheat, at one dollar and eighty cents per cental.

"'E. H. KOWALSKY.

"'That said contract was made in the name of A. Gerberding, as the agent of plaintiffs, but the plaintiffs were and still are the real parties in interest.

"'That said plaintiffs, on the thirteenth day of August, 1887, in the said city and county of San Francisco, at the office of said defendant, tendered the delivery of said five hundred tons of wheat to said defendant, and performed all the conditions on their part under said contract. Said plaintiffs then and there demanded from said defendant the sum of eighteen thousand dollars, payment as the price of said wheat according to said contract; that said defendant denied having purchased said wheat, and refused to pay for said wheat, to the damage of plaintiffs in the sum of eighteen thousand dollars.

"'That said plaintiffs made said contract with said defendant in good faith, for the purpose of delivering said wheat to said defendant, and had said wheat in

warehouse in San Francisco for the purpose of deliver-
ing the same on said contract to said defendant.

" ' Wherefore plaintiffs pray for judgment against said
defendant, in the sum of eighteen thousand dollars, in-
terest, and costs of suit, and for such other and further
relief as justice may require.

" ' WHITTEMORE & SEARS,<br>" ' Att'ys for Plaintiff.'

" This complaint was demurred to, on the ground, —
1. That it is ambiguous, unintelligible, and uncertain, in
that ' no meaning is alleged of the words " S/87," in the
contract'; and 2. That the defendant does not state facts
sufficient to constitute a cause of action.

" The alleged contract is not, does not purport to be,
and is not alleged to be an agreement to ' sell and buy';
nor an agreement on the part of the plaintiffs to sell
wheat at any time. It imposes upon the plaintiffs no
obligation to be performed by them. If it be a valid
contract, it is an agreement by the defendant, for an ex-
ecuted consideration, to buy and accept delivery of, from
the plaintiffs, a certain quantity of wheat, within a cer-
tain period of time, for a certain price, at the option of
the plaintiffs, and to pay plaintiffs the price therefor.
(Civ. Code, secs. 1726–1730; Wharton on Contracts, sec.
453 a.) Nor is the action brought to recover the price
or value of wheat ' sold and delivered,' or ' bargained and
sold,' but to recover damages for defendant's breach of
his alleged conditional agreement to buy the wheat at
plaintiffs' option.

"1. As against a general demurrer, I think the facts
expressed and implied in the complaint *barely* constitute
a cause of action. The written instrument set out pur-
ports to have been signed by the defendant, and it is
designated as the contract for the breach of which (after-
wards alleged) the action is brought. This implies that
it was executed by the defendent. The instrument ad-
mits the receipt of a consideration of one hundred dol-
lars, for which defendant ' allows ' (gives) plaintiffs the
' privilege ' (option) to deliver (or not) to defendant,

within thirty days, five hundred tons of wheat, 'at (the price of) one dollar and eighty cents per cental.' The giving of the privilege to deliver the wheat to defendant *at a certain price* implies that he will receive and pay for it the price specified. The foregoing, I think, is the only admissible construction of the instrument as pleaded. If it will not bear this construction, it can have no effect as an agreement. As a breach of this agreement, it is alleged that within thirty days the plaintiffs tendered a delivery of the wheat and demanded payment of the price, thus creating the condition upon which defendant's liability depended, and that defendant refused to pay the price. This shows a breach of the agreement, for which the plaintiffs were entitled to such damages as proximately resulted therefrom.

"2. The grounds of the special demurrer — that the 'complaint is ambiguous, unintelligible, and uncertain' — do not appear on the face of the complaint. The words, or abbreviations, 'S/87,' appear to have been used as descriptive of the wheat, and to require oral evidence of their customary meaning in the business of dealing in wheat; but such oral evidence need not be stated in a pleading in which the written agreement is set out *in hæc verba.* The meaning may be proved on the trial for the purpose of enabling the court to interpret the words. (Civ. Code, secs. 1636, 1644–1646; *Callahan* v. *Stanley*, 57 Cal. 476.) Had it appeared on the face of the complaint, that even with the aid of parol evidence, the words 'S/87,' as used, were meaningless, and that a complete contract was expressed without them, they might have been disregarded as surplusage (*Harrison* v. *McCormick*, 89 Cal. 327); and certainly a complete contract is expressed without them. But it does not appear that, read in the light of admissible oral evidence, they are meaningless or unintelligible. So read, they may have a certain unambiguous meaning descriptive of the subject of the contract. Therefore the court could not see on the trial of the demurrer that those words were

unintelligible, or that their use rendered the complaint ambiguous or uncertain.

" 3. The execution of the contract and the breach thereof, as alleged, are found as facts. Therefore the findings support the judgment.

"4. The contract as set out in the complaint being denied, it appears by the statement on motion for new trial that to prove the contract plaintiffs offered in evidence a paper on which was written the alleged contract as pleaded. Above the manuscript, and on the same paper, was printed matter composed of what was admitted to be extracts from the rules of the Produce Exchange and Call Board of San Francisco. The paper was objected to by counsel for defendant, on the ground that it varied from the contract as pleaded, the printed matter not being set out in the complaint. Thereupon, for the apparent purpose of proving that the printed matter was no part of the contract, and that the ' contract was entirely independent of the printed heading; the plaintiff Berry, on behalf of plaintiffs, testified to the circumstances under which the contract was made, and to what he claimed to have been all the verbal negotiations—all that was said by each party—preceding and leading up to the signing of the written contract, which he said was drawn by him according to the verbal understanding. He was further permitted to testify, against the objection of defendant's counsel, that the 'contract was drawn independent of any connection with what is known as the Produce Exchange. . . . . I was not figuring on the contract on the board. It was business outside. . . . '. I never read the printed matter on the top of the contract. It had nothing whatever to do with the contract. It is the written portion of this piece of paper that constitutes the entire contract between myself and the defendant.'

" F. J. Bonney, a witness for the defendant, testified that he was a farmer, and was a member of the Produce Exchange and Call Board on or about July 15, 1887, and was somewhat familiar with the rules thereof, and that

he was present when the contract in suit was made, and heard the preliminary talk between the parties, but was not present when defendant signed the contract. Thereupon defendant's counsel asked the witness the following questions, each of which was objected to, on the ground that the effect of the answer thereto would be to vary the written contract; and the objection to each question was sustained by the court, defendant duly excepting.

"'Q. Was there any reference had in the conversation between these parties to what was known as the call-board contract?

"'Q. Was anything said about the contract, which was to be entered into between the parties, being governed, or to be complied with, or performed under the rules of the San Francisco Produce Exchange and Call Board?

"'Q. Was the term "board contract" used in reference to the contract proposed to be executed by them in regard to the dealing in wheat upon which they were entering?'

"The defendant's counsel also offered in evidence all the rules and regulations of the Produce and Exchange Call Board, but upon objection by plaintiffs' counsel they were excluded by the court.

"It appears that Gerberding (in whose name the contract was made) was a member of the exchange board at the date of the contract. The defendant at the same time owned a seat in the board, but was not then occupying it, having leased it temporarily to another person. The plaintiff, Berry, had formerly been a member of the board.

"As to whether, under the facts and circumstances disclosed by the evidence, the contract could properly be considered a ' board contract,' and as to what extent, if at all, it was governed or affected by the rules and customs of the board, the testimony was conflicting."

(The foregoing is adopted from the opinion of Commissoner Vanclief, delivered in Department.)

It is testified that the phrase " S/87 wheat," used in the contract sued on, is an abbreveiation which origi-

nated in the call board, where, from the necessities of business, such a phrase is understood to mean what it would take quite a number of words to express in detail. It was testified by most of the witnesses that "S/87 wheat" meant that the seller was to have the season of 1887 in which to complete his contract, and that it meant also that the wheat should be "number one white wheat." There was also testimony to the point that the said phrase "S/87 wheat" does not mean that the one party is to actually deliver the amount of wheat stated in the contract, or that the other party is bound to receive it all and pay the whole amount at the stated price; but that the seller is simply to produce what are denominated "call-board contracts" for the wheat, instead of the wheat itself. And owing to the peculiar character of the contract here sued on, and the testimony as to the technical meaning of some of its terms, we think that the court could not arrive at a just decision of the case without knowing whether the printed matter was a part of the contract, whether it should be considered as a "board contract," and whether the phrase "S/87 wheat" has any meaning other than that given to it by said board, and what that meaning is. The solution of these questions involves matters of fact to be determined upon evidence. We think, therefore, that the testimony of plaintiff Berry when testifying for plaintiffs was properly admitted over the objections of defendant, and that the court erred in sustaining objections to the questions asked by defendant of the witness Bonney, as above stated, and also in sustaining the objections to the introduction of the rules and regulations of the stock exchange and call board. The contract may turn out to be a pure gambling contract, and therefore void; but from any point of view, the said evidence offered by defendant should have been admitted.

Judgment and order reversed, and a new trial ordered.