HALL ET AL., APPELLANTS, v. LOMMASSON ET AL., RESPONDENTS,

(No. 8,279.)

(Submitted March 16, 1942. Decided April 18, 1942.)

[124 Pac. (2d) 694.]

*Mr. Lloyd I. Wallace,* for Appellants, submitted a brief and argued the cause orally.

*Messrs. Pope & Smith,* for Respondents, submitted a brief; *Mr. Walter Pope* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This action involves the construction of a partnership agreement. The litigants were before this court in the case of *Lommasson* v. *Hall,* 111 Mont. 142, 106 Pac. (2d) 1089. The provisions of the agreement were set out with particularity in that case and will not be repeated here except to recite section 29 thereof. The plaintiff in the former action is the defendant in

this case and brought that action to have the agreement rescinded. The trial court held that plaintiff did not establish his right to have the contract rescinded and sustained a demurrer to the complaint, and upon the failure of plaintiff to plead further, gave judgment for the defendant. On appeal we affirmed the judgment.

The plaintiffs and defendant in the case at bar were the first and second parties, respectively, to the agreement, section 29 of which is as follows: "In event party of the second part fails, neglects or refuses to make mortgage loan payments for a period of six months then and in that event this agreement shall terminate and parties of the first part shall become the sole owners thereof and any sums that party of the second part has paid into said business or applied on said mortgage shall be returned to him at the rate of $1000.00 per year, plus six per cent interest per annum, during the time the same has been invested, minus whatever dividends or payments he shall have received out of said business, and it is further agreed that should party of the second part become disabled or otherwise unable to continue with said payments as in this agreement provided, he may then, upon registered mail notice to parties of the first part, withdraw from said partnership and all sums paid out by him on account of said mortgage or into said business shall be returned to him at the rate of $1,000.00 per year, plus six per cent per annum interest from the time the said sums have been invested or advanced."

On the termination of the litigation in the former action, Lommasson "failed and refused" for more than six months to make any further payments on the mortgage lien of the Home Owners Loan Corporation, and the Halls commenced this action to enforce specific performance of the contract. The phase of the controversy as to whether this is an action for specific performance or one to remove a cloud from the title will be adverted to later.

The pleadings develop no material issue of fact between the parties. Plaintiffs allege and defendant admits that the defend-

ant made no payments on the mortgage loan mentioned in the agreement after October, 1939; the defendant alleges by counterclaim and plaintiffs admit payment to the partnership by the defendant of $4,332.49. The only issue raised by the pleadings arises from an allegation in the affirmative defense wherein the defendant charges the plaintiff J. E. Hall with the sale or disposal of assets without defendant's consent, failure to account for proceeds of sales, and other irregularities in the management of the enterprise. Such charges are denied in the reply. The defendant is ready and willing to reconvey all his interest in the property now owned by the partnership to the plaintiffs, but refuses to make such conveyances except on the condition that he be given a lien upon all the partnership property to secure the amount due him, and likewise to secure such further advances as it shall become necessary for him to make to protect the partnership property. Both stand upon the agreement, but disagree as to the time the first installment shall be made to the defendant on the amount found due him, and the plaintiffs vigorously contend that no authority can be found in the agreement to justify that part of the court's decree directing the plaintiffs to execute mortgages in favor of the defendant as a condition precedent to reconveyance of the property to them. The defendant does not contend that giving such security is an obligation that arises out of the contract, but is a clear right to which the defendant is entitled as a matter of equity by reason of the financial condition of the plaintiffs and of the partnership for which financial condition the defendant obviously believes J. E. Hall is solely responsible.

There were attached to the complaint as exhibits a copy of the partnership agreement, a copy of an inventory of the personal property that was turned over to the partnership in the beginning naming the items in detail, a copy of the warranty deed conveying a half interest in the land from the plaintiffs to the defendant, and a copy of notice by the plaintiffs to the defendant of termination of the partnership agreement. Defendant set out in his counterclaim an itemized account of the

several payments made by him to the partnership, giving the dates, separate amounts and the purpose for which the payments were made. The cause was tried to the court sitting without a jury. Judgment was for the defendant and the plaintiffs appealed.

The assignments of error all go to such parts of the decree as fix the time when the first installment shall be paid to the defendant, and further to the court's requiring the plaintiffs to pledge all the assets of the partnership to secure the amount due the defendant, and further specify error as to the court's requiring the plaintiffs to give security on the property to protect the defendant against loss for such further advances as may become necessary for him to make in protecting the property.

The court found that the six-month period mentioned in section 29 of the agreement, relating to the time the defendant ceased to make payments on the mortgage loan, expired April 25, 1940.

Next it was found that the amount to be paid Thomas Lommasson was $4,332.49 with interest; that since Lommasson ceased to make payments on the partnership obligations, delinquencies in the payment of installments on the loan and taxes had occurred, and that, although the plaintiffs had been in possession of the property at all times and had sold and disposed of all the foxes, their increase and other personal assets of the partnership, still delinquencies in the payment of the partnership obligations had been permitted to occur and increase and "that a money judgment against the plaintiffs is probably uncollectible." Conclusions of law were made in accordance with the findings.

The parts of the decree directing that instruments creating a lien on the partnership property to secure the defendant being the only parts the plaintiffs challenge, such parts are set out in full:

"It is further ordered, adjudged and decreed, and this does order, adjudge and decree, that the plaintiffs be, and they are

hereby, ordered and required within said period of thirty (30) days to execute and deliver to the Clerk of the Court for delivery to the defendant, Thomas Lommasson, their mortgage, mortgaging all of said property, real and personal, to said defendant to secure the due payment to the said defendant of the sum of Four Thousand Three Hundred Thirty-Two and 49/100 Dollars ($4,332.49), with interest thereon at the rate of six per cent (6%) per annum from the several dates set forth in Paragraph IV of the defendants' affirmative defense and counterclaim, which sum is payable in accordance with said agreement of October 1, 1936, in annual installments of One Thousand Dollars ($1,000.00), each, the first installment being due April 25, 1941, which said sums are adjudged owing to said defendant, Thomas Lommasson, by the plaintiffs. Said mortgage shall be executed and acknowledged in the manner provided by law, and shall be conditioned for the due payment of said sums to said Thomas Lommasson, and also for the payment by the plaintiffs of all sums due and payable and hereafter to become due and payable upon the mortgage to Home Owners Loan Corporation described in the pleadings and in said agreement of October 1, 1936, and for the due performance by plaintiffs of all other conditions of said prior mortgage, including the payment of taxes and assessments levied against said property, and shall provide that the same may be foreclosed for the full amount secured thereby in the event of any default thereunder; with the further proviso that the same not be foreclosed unless or until plaintiffs shall become delinquent in a total sum of at least $1,000.00, nor in any event prior to September 1, 1941.

"It is further ordered, adjudged and decreed that in the event that either said deed or said mortgage be not executed and deposited as required by this decree, or if any of the parties hereto do not comply herewith within the time specified herein, this decree shall have the same operation and effect, and be as available, as if said instrument or instruments had been executed conformably hereto, and this decree shall be taken and

deemed to have the same effect as if said instrument or instruments had been executed in accordance herewith.''

Then follows a description of both the real and personal property. We think it will become obvious from the testimony of J. E. Hall, and other evidence shown by the record, that the provisions of the decree to which the plaintiffs object were necessary if the defendant were to have any chance to recover any part of his investment, and that the contested parts of the decree pursue the course of adjustment provided by the agreement when and if the agreement should be terminated.

Before taking up for consideration the decisive question in issue—the power of the trial court to direct the execution and delivery to the clerk of court instruments creating a lien in favor of the defendant on all the partnership property for the purposes mentioned—we will dispose of the contention of the plaintiffs as to the court's alleged error in directing the plaintiffs to pay the first $1,000 installment to the defendant within thirty days from the entry of the judgment and other questions of secondary importance.

Plaintiffs contend that the first installment should not have been made payable until one year from and after the date of the termination of the contract. That contention, if accepted, has ceased to be material as under such contention the first installment is now past due. The court found the six-month period mentioned in section 29 of the contract expired April 25, 1940. If plaintiffs' contention be correct, the first installment would have become due April 25, 1941. There is no assignment of error as to that finding of the court, and it is therefore final and renders unnecessary any decision as to when the first installment was due. It could not be later than April 25, 1941.

The order of the court as to time of payment of the first installment worked no injustice to the plaintiffs. They had had the possession of the property at all times, had received and obviously applied to their own uses all the income of every kind, and no dividends had been paid to the defendant and nothing

on any of the partnership obligations, and at the same time the personal assets of the concern were depleted to such an extent that save for the tools and implements practically nothing was left. What was the condition of the indebtedness at the time this action was tried in the district court? Defendant's Exhibit 1, admitted in evidence, shows that on or about February 3, 1941, there was an unpaid balance on the mortgage of $7,468.37 and delinquent taxes in the amount of $442. Exhibit 2, likewise admitted, is a notice of additional taxes paid by the mortgagee of $272.65, a total past due and owing the mortgagee of $8,183.02. This is the result: Approximately five and a half years after the partnership got under way, with the personal assets practically depleted to zero, the indebtedness to the mortgagee had increased from $7,787.01 to $8,183.02, and this last named amount, plus interest and taxes accrued since February 3, 1941, is obviously due the mortgagee.

In addition to the amount due the mortgagee, the plaintiffs admit the amount they will owe the defendant in the sum found by the court, $4,332.49, and interest at six per cent thereon. There is interest due on the full amount due the defendant from October 25, 1939, to date, and interest on the respective amounts from the dates paid in until October 25, 1939, which would bring the total due the defendant at this time to over $5,200. This amount added to the $8,183.02 due the mortgagee makes a total of $13,383.02, which does not take into account interest accrued on the mortgage loan since February 3, 1941, and taxes, the latter being a lien on the land and become part of the mortgagee's lien if paid by it. Recalling the fact that on October 1, 1936, the indebtedness of the partnership was $7,787.01, we have an increase in that indebtedness of $5,596.01. and a heavy decrease of assets during the same period.

Hall admits that during the period of time beginning about October 28, 1939, and about the time the trial of this action was commenced, approximately February 3, 1941, he disposed of practically all the income-producing property belonging to the partnership, specifically mentioning all the foxes,

all the chickens, all the hogs, one cow, one horse, and the death of another horse. The foxes were the principal source of income and the agreement expresses the intention of the parties to have been at the time the partnership was entered into to increase the foxes to 100 pairs. The copy of the inventory attached to the complaint shows that there was on hand on October 1, 1936, when the partnership started operation, two horses, three cows, one pair of purebred Hampshire hogs, twelve chickens and thirty pairs of foxes. Hall testified that he sold forty-one fox pelts. No explanation was made as to what became of the other nineteen of the sixty foxes on hand in the beginning, nor whether there was any increase or not in the three years of operation. When all the foxes, the horses, the chickens, hogs and and one of the three cows had been disposed of, all the property left for the partnership to depend on for an income were two cows and such grain and forage as could be produced on that part of the 149 acres of land owned by the partnership that had been brought under cultivation. All the time taxes on the property and installments on the mortgage loan were accumulating and were allowed to become delinquent. Instead of the foxes being increased to 100 pairs, all on hand were disposed of and without consent of the defendant.

Notwithstanding the sale of all the property mentioned, no payments were made on any of the obligations of the partnership, and no dividends were paid to the defendant on his investment, or payments of any other nature, and no accounting appears in the record anywhere for money derived from the sale of partnership property which money was obviously appropriated by Hall. Hall and his wife were entitled to fifty dollars per month for living expenses. We think this review of the evidence is amply sufficient to sustain the court's conclusions that a money judgment against the plaintiff could not be collected.

Plaintiffs' contention that the court erred in this particular is entirely without merit. Had the court done less, the judgment in favor of the defendant would have been of little, if any,

value. We think the court's action in the premises is in full accord with the established rules of equity. By directing the defendant to execute and deliver to the clerk of court instruments of conveyance of all his interest in the partnership property, the court gave judgment in favor of the plaintiffs for all they prayed for in that respect, but bound the clerk by the decree to withhold delivery of the instruments of conveyance until the plaintiffs should do equity by securing to the defendant, in so far as possible, the fulfillment of the plaintiffs' obligations to the defendant as set out in the agreement.

The judgment exemplifies in a forceful manner the predominant principles of equitable jurisprudence, namely, "He who seeks equity must do equity." Let us see what courts of equity have heretofore done in similar actions, and what our pertinent statutes provide relative thereto.

The case of *Larson* v. *Peppard*, 38 Mont. 128, 99 Pac. 136, 137, 129 Am. St. Rep. 630, 16 Ann. Cas. 800, was an action to quiet title. Land belonging to the plaintiffs had been sold for delinquent taxes. The purchaser of the tax title and his grantee paid the taxes on the land for a number of years. It was conceded that the tax proceedings leading up to the sale were irregular and that plaintiffs were entitled to have their title quieted. It was further conceded that the defendants could not recover the taxes paid by an action at law. But the court applied the rule that "he who seeks equity must do equity," and held "that the payment or tender of the taxes which the owner ought to have paid will be held to be a condition precedent to his right to the relief demanded." The court remanded the action to the district court with instructions that if the amount of taxes that had been paid by the defendants were paid within thirty days, with interest, the decree quieting title should be made, and if such payments were not made, the plaintiffs should have no relief whatever.

In the case of *Kinney-Coastal Oil Co.* v. *Kieffer*, 277 U. S. 488, 507, 48 Sup. Ct. 580, 584, 72 L. Ed. 961, the court said: "It is a general rule that a court of equity, in a suit of which it

has and takes cognizance, may administer complete relief between the parties, even though this involves the determination of legal rights which otherwise would not be within the range of its authority. [Citing cases.] And under that rule a court of equity in awarding relief to one party may impose conditions protecting and giving effect to correlative rights of the other. (*Walden* v. *Bodley*, 14 Pet. 156, 164 (10 L. Ed. 398) ; *Lynch* v. *Burt*, [8 Cir.] 132 Fed. 417, 432; *Burnes* v. *Burnes* [8 Cir.] 137 Fed. 781, 791.) ''

We think it unnecessary to quote from similar decisions further. It seems to us that the equities of the matter have been so fully regarded and applied by the trial court in the decree that it is unnecessary to encumber the records further, except to cite other cases where the fundamental principle of equity heretofore mentioned has been applied. Further authorities relied on are these: *Frisbee* v. *Coburn*, 101 Mont. 58, 71, 52 Pac. (2d) 882; *Wamsley* v. *Lincicum*, 68 Iowa 556, 27 N. W. 740; *Wilbur* v. *Donohoe, etc. Co.*, 33 Cal. App. (2d) 395, 91 Pac. (2d) 910; *Sheehan* v. *Vedder*, Cal. App. 285 Pac. 724; Id., 108 Cal. App. 419, 292 Pac. 175; *Henry* v. *Phillips*, 163 Cal. 135, 124 Pac. 837, Ann. Cas. 1914A, 39; 51 C. J. 266; *Hogan* v. *Thrasher*, 72 Mont. 318, 329, 233 Pac. 607; Restatement of the Law of Contracts, sec. 373; *Barrell* v. *Britton*, 258 Mass. 383, 155 N. E. 193; *Beardslee* v. *Grindley*, 236 Mich. 453, 210 N. W. 486.

58 Corpus Juris, page 1268, reads: ''Where the contract requires execution of a deed before final payment, the decree should generally provide security, by mortgage or otherwise, for the deferred payments.''

One other contention of the plaintiffs we think requires some notice. It appears to be their view that the court's decree requiring a pledge of the partnership property to secure the discharge of the obligations is purely a question of law to be determined according to the letter of the contract and in disregard of any equitable questions that may have arisen by reason of the acts of the parties. We think this is a misconception of equity jurisprudence. ''The office of equity is to supplement,

and not to supplant the law." (19 Am. Jur. 107.) Section 28 of Article VIII of our Constitution provides "Law and equity may be administered in the same action." Equity takes particular cognizance of partnership affairs (10 R. C. L. 345), and many matters that arise under contracts generally are likewise cognizable in equity (10 R. C. L. 351).

The case of *Barrell* v. *Britton,* 258 Mass. 383, 155 N. E. 193, 194, is strikingly similar both in the facts and the question of law involved to the case at bar. Defendants sold the plaintiff real property for $17,000. The agreement provided that plaintiff should pay the defendant $250 quarterly and that "title to remain as at present until at least $5,000 has been paid on principal." In a former action between the same parties in 252 Mass. 504, 148 N. E. 134, it was held that when $5,000 was paid on the contract the plaintiff was entitled to specific performance. The trial court decree directed that the defendant within 21 days from the date thereof, execute a proper quitclaim deed to the plaintiff but the decree said nothing about securing the defendant for the balance of the purchase price or for taxes and insurance which the agreement provided the plaintiff should pay. It was agreed that the plaintiff " 'has no property or assets, real or personal, which can be attached or come at in law or in equity, other than his interest in the premises described in the pleadings in this case.' The agreement between the plaintiff and defendant is silent on the question of securing the seller for the balance of the purchase price and securing her for insurance and taxes." The court held:

"As $5,000 has been paid to the defendant, the plaintiff is entitled to a conveyance. But he cannot have this conveyance without * * * securing the seller for the balance due on the purchase price, and protecting her against loss if the property is destroyed by fire, as well as providing for the payment of taxes. The plaintiff according to the agreed facts has no property or assets. In seeking equity he must do equity; he cannot have the title to this real estate unless he provides for the rights and demands belonging to the defendant, and involved

in the subject-matter of the controversy. He is entitled to relief in equity; but he is not entitled to this relief unless such conditions are imposed on him as in the circumstances shown a court of equity considers equitable, and are such that he should comply with them. It would be contrary to fundamental principle of equity to permit the plaintiff to gain the title to this property for $5,000, and leave the defendant without any assurance that she would receive or could collect the balance due her. * * *

"The decree is to be modified by providing that the plaintiff assume the payment of the existing mortgage, secure the defendant by a mortgage on the property, junior only to such existing mortgage, for the balance of the purchase price according to the terms of the contract, protect the plaintiff against the payment of taxes, and provide for the insurance of the property against fire to the extent of the defendant's interest. So modified, the decree is affirmed."

Our conclusions as to the merits of the action are further reinforced by our own Code section as follows:

"8716. Neither party to any obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely, or nearly so, together with full compensation for any want of entire performance."

"8722. Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party, except where his failure to perform is only partial, and either entirely immaterial, or capable of being fully compensated; in which case specific performance may be compelled, upon full compensation being made for the default."

"8723. Specific performance cannot be compelled when it would operate more harshly upon the party required to perform than its refusal would operate upon the party seeking it."

As to the nature of the action, plaintiffs ask for the remedy

██ provided by the agreement which, on termination, was re-investment of title in them. The title to the defendant had passed out of the plaintiffs by warranty deed; it could be returned to them only by conveyance by the defendant or decree of court. The court ordered the defendant to make the reconveyance according to the terms of the agreement. Clearly it is an action for specific performance.

Such other contentions as are advanced by the plaintiffs are not of sufficient merit to entitle them to consideration in the face of the outstanding principle of equity that is involved in the action.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ERICKSON and ANDERSON concur.