LEWIS, APPELLANT, *v.* ARONOW, RESPONDENT.

(No. 5,982.)

(Submitted October 20, 1926. Decided November 5, 1926.)

[251 Pac. 146.]

*Sales—Buying of Grain—Oral and Written Contracts—Statute of Frauds — Customs and Usages — Pleading — Complaint — Sufficiency—Written Contracts—Uncertainty of Price to be Paid—Effect on Validity of Contract.*

Oral Contracts—Statute of Frauds—Note or Memorandum—When Sufficient.
    1. In order to take an oral contract for the sale of personal property out of the statute of frauds, the note or memorandum thereof referred to in section 7591, Revised Codes, must be so drawn that the essentials of the contract may be ascertained without resort to oral evidence, the rule being complied with if the material elements of the contract are stated in general terms.

Same—Note or Memorandum—Parol Testimony Admissible, for What Purposes.
    2. Parol evidence is admissible to show the situation and relation of the parties to an oral contract of sale of personalty evidenced

  1.  See 25 R. C. L. 645.
  2.  See 6 R. C. L. 849.

[77 Mont. 348.]

by a memorandum in writing, as well as the surrounding circumstances at the time of its execution; also for the purpose of applying the description in the memorandum and thus identifying the subject matter of the contract, provided the subject matter is so described by the memorandum as to be capable of certain identification, as well as to explain latent ambiguities.

Same.

3. For the purpose of enabling the court to interpret the abbreviations "No. 1 D. N. S." used in a memorandum evidencing the sale of wheat to a wheat buyer, where the oral contract of sale was attacked on the ground that it was void under the statute of frauds, parol evidence was admissible to show their customary meaning in the business of dealing in wheat.

Same—Customs and Usages—Pleading.

4. Where customs or usages relating to a particular locality or trade are relied upon, they must be pleaded by the party seeking to make them a basis for recovery or defense.

Same—Buying of Grain—Usages and Customs—Complaint—Sufficiency —Parol Testimony—Admissibility.

5. Complaint in an action to recover on an oral contract of sale of wheat evidenced by a note or memorandum *held* sufficient as to allegations relating to local customs and usages pertaining to the business of wheat buying as against a general demurrer; *held* further that under it parol evidence was admissible to show who was the buyer and who the seller, the time of payment, the amount to be paid and the method of determining the amount.

Written Contracts—Obligations of Parties Determinable from Writing Alone.

6. Where a party seeks to recover on a written contract of sale resort must be had to it alone, under section 7520, Revised Codes of 1921, in determining the obligations assumed by defendant in attaching his name to it.

Contracts of Sale—Price must be Definite or Capable of Determination.

7. Where a contract of sale is executory, the price to be paid must be definitely stated or made capable of definite determination.

Same—Grain Buying—Contract Void for Uncertainty as to Price to be Paid.

8. In an action by a wheat buyer to recover for breach of contract by the seller in reliance upon a written memorandum which recited that the price to be paid was "subject to terminal weights, grades and charges" the complaint in which did not rely upon local customs or usages in the wheat buying business subject to explanation by parol testimony, contract *held* void for uncertainty as the price to be paid (par. 7 above) and therefore a general demurrer to the pleading was properly sustained.

*Appeal from District Court, Hill County, in the Eighteenth Judicial District; Carl E. Borton, Judge of the Seventeenth District, presiding.*

4. Necessity for pleading local usage or custom, see note in 14 Am. St. Rep. 257. See, also, 27 R. C. L. 195.

ACTION by F. F. Lewis, doing business as the Lewis Grain Company, against Boris A. S. Aronow. Judgment for defendant, plaintiff appeals. Reversed and remanded as to first cause of action, with direction to overrule defendant's demurrer as to it, and affirmed as to second cause of action.

*Messrs. Arnot & Doyle,* for Appellant, submitted an original and a reply brief; *Mr. W. E. Arnot* argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief, and argued the cause orally.

The subject matter of the contract, as expressed in the written memorandum, is essentially different from the subject matter of the oral agreement, and, implies an agreement as to quality and quantity not contained in the oral agreement, hence the writing is insufficient to take the oral contract out of the statute of frauds. (*Barkemeyer Grain & Seed Co.* v. *Hannant,* 66 Mont. 120, 213 Pac. 208; *Rauth* v. *Southwestern Warehouse Co.,* 158 Cal. 54, 109 Pac. 839; *Borum* v. *Swift & Co.,* 125 Ga. 198, 53 S. E. 608; Williston on Contracts, secs. 575, 576; 27 C. J. 267–269, 275, 276, 277, 278, 274.).

The writing is insufficient in that it fails to indicate who is the buyer, and who the seller. (Sec. 1306, 2 Elliott on Contracts; 27 C. J. 275, 276; *Grafton* v. *Cummings,* 99 U. S. 100, 25 L. Ed. 366 [see, also, Rose's U. S. Notes]; *Breckenridge* v. *Crocker,* 78 Cal. 529, 21 Pac. 179; *Collins* v. *Keller,* 62 Or. 169, 124 Pac. 681; *Arbogast* v. *Johnson,* 80 Wash. 537, 141 Pac. 1140.)

The contract is void for uncertainty. Even if the court could tell which one of the signers was to deliver the grain, and which one was to receive it, there is no indication as to whether the parties signing are acting as principals or agents. This is likewise fatal to the certainty of the contract. (*Collins* v. *Keller,* 62 Or. 169, 124 Pac. 681, at 682. See, also, *Shepard* v. *Freeman,* 40 Mont. 144, 105 Pac. 484.).

The contract is also void for uncertainty as to price, time of payment and the terminal whose "weights, grades and charges" are the fixed price. The clause "subject to terminal weights, grades and charges" makes such "terminal weights, grades and charges" material in fixing the price, and the time of payment. The terminal, however, is not indicated in the writing. Respondent's contention that a terminal whose "weights, grades and charges" was to be determinative of the price to be paid, should have been more specifically designated than it was in the memorandum is based on the fact that since these "weights, grades and charges" would be different at the different terminals, and since this difference would be reflected in the price paid, failure to more specifically designate such terminal makes the contract void for uncertainty in that the price is not definitely specified. The principle that the price, where it is agreed on, must be stated is well settled. (See *Ascbal* v. *Levy,* 19 Bing. 376, 4 Moore & S. 217; *Price* v. *Stipek,* 39 Mont. 426, 104 Pac. 195; *Levy & Bros.* v. *A. Mautz & Co.,* 16 Cal. App. 666, 117 Pac. 936, at 937.)

"Omitted terms and conditions which are essential to a completed agreement may not be shown by parol nor can they be supplied by proof of custom which is only admissible for the purposes of interpreting the meaning of language employed by the parties or explaining it where its meaning is otherwise obscure." (*Solomon* v. *McRae,* 9 Colo. App. 23, 47 Pac. 409.) "The use of such evidence [customs and usages] is confined, however, to cases where the intent is not clearly expressed in the contract, for it is to be remembered that usage cannot make a contract where there is none." (*Parham* v. *Chicago etc. Ry. Co.,* 57 Mont. 492, 189 Pac. 227.) Nor can a custom prevail against a well-settled rule of law. (23 R. C. L. 1406.) "An alleged usage contrary to the rule of law that there is no implied warranty or stipulation as to the quality of goods sold is not good." (23 R. C. L. 1406.)

As to the general rules by which the sufficiency of the note or memorandum is to be tested, see 27 C. J. 267–269, 275–276; 1 Williston on Contracts, pp. 1101, 1102, 1109.

MR. JUSTICE STARK delivered the opinion of the court.

The amended complaint in this action (hereinafter called the complaint) alleges that the plaintiff is engaged in the business of buying and selling grain under the name of Lewis Grain Company, and that one C. A. Leighton, at the times involved, was his duly appointed agent; that on September 10, 1924, at Gildford, Hill county, the plaintiff, by an oral agreement, purchased from the defendant, and the defendant sold to the plaintiff, 10,000 bushels of wheat then unthreshed and standing in stack on defendant's ranch near Gildford, which defendant then represented to plaintiff to be No. 1 dark northern spring, 14 protein wheat, and that defendant promised and agreed to deliver the same to the plaintiff on board cars on the railroad track at Gildford within a reasonable time, and that plaintiff promised and agreed to pay defendant therefor the sum of $1.16 per bushel, "subject to terminal weights, grades, and charges"; that the wheat was so purchased by the plaintiff from the defendant for reshipment by plaintiff to a terminal market for resale, which fact was then well known to the defendant. It is further alleged that, in order to confirm such purchase and to make a note or memorandum of such oral contract, the plaintiff executed and subscribed a written confirmation thereof and delivered the same to the defendant in duplicate, and the defendant thereupon subscribed his name thereto under the words "accepted by" indorsed thereon, and thereupon redelivered one of the duplicates of said contract or confirmation to the plaintiff and retained the other. The contract or confirmation so referred to is as follows:

"Gildford, Montana, Sept. 10, 1924.

"This confirms purchase to-day of ten thousand bushels of No. 1 D. N. S. 14 Protein wheat on track at Gildford, Montana,

at one dollar and sixteen cents per bushel, subject to terminal weights, grades, and charges, to be delivered within a reasonable time.

> "LEWIS GRAIN COMPANY,
>         "By C. A. LEIGHTON.

"Accepted by:
        "BORIS A. S. ARONOW."

The complaint then sets forth in detail various customs and usages in vogue among persons engaged in the grain business at and about Gildford, to the effect that, where a sale of wheat is made under an oral contract of sale, the purchaser subscribes and delivers to the seller a written confirmation of the purchase, or the seller subscribes and delivers to the purchaser a written confirmation of the sale, and the party to such contract, other than the one confirming such sale or purchase, accepts such confirmation by subscribing his name upon it under the words "Accepted by" indorsed thereon; also that, where wheat is sold to be delivered on board cars on the railroad track at the point of origin, subject to terminal weights, grades, and charges, the purchaser has the option of shipping such wheat to any terminal market to which wheat is ordinarily and usually shipped from the point of origin, and, upon delivery of such wheat on board the railroad cars and the delivery of the bill of lading therefor to the purchaser, the purchaser advances to the seller from eighty to ninety per cent of the purchase price thereof, as shown by the bill of lading, the exact amount between eighty and ninety per cent to be advanced being at the option of the purchaser, and the balance of the purchase price is paid upon the receipt of returns from such wheat at the terminal market to which the same is shipped by the purchaser; and that the seller of the wheat is paid according to the grade and amount of such wheat arriving at the terminal market to which it is shipped, and as shown by the weights and amount thereof at such terminal market; that the grade of such wheat is determined, fixed and ascertained by the inspection and testing thereof by the state grain inspector of the state where the terminal market to which the wheat is shipped

is located, acting under and in pursuance of the provisions of the United States Grain Standards Act (U. S. Comp., Stats. secs. 8747½–8747½k). It is further alleged that these customs and usages were general and of general knowledge and notoriety among persons engaged in the grain business and in the business of buying, selling and dealing in wheat and other grains; that they were well known to the parties to the contract in question, and that said parties, in making said contract, dealt with knowledge thereof and with reference to and in pursuance of them and all of them.

It is further alleged that the defendant failed and refused to deliver the wheat mentioned in said oral contract, or in said memorandum, within a reasonable time or at all; that, after the lapse of a reasonable time, the plaintiff demanded of the defendant that he deliver the wheat as provided by said contract, but that defendant refused to deliver the same or any part thereof, but, on the contrary, notified the plaintiff that he would not deliver said wheat; that plaintiff had performed his part of said contract, and had at all times been ready, able and willing to receive and pay for said wheat in accordance with the agreement; and that, by reason of the defendant's failure to deliver said wheat, the plaintiff has been damaged in the sum of $3,750, no part of which has been paid.

For a second cause of action the complaint sets out that the plaintiff bought from the defendant, and the defendant sold to the plaintiff, 10,000 bushels of No. 1 dark northern spring, 14 protein, wheat, and then recites sundry oral agreements and stipulations made in connection therewith, following which it is alleged "that, in order to reduce said contract to writing and to make a note or memorandum thereof, the plaintiff and defendant executed and delivered to each other the following contract in writing, to wit," and then sets forth the same written instrument referred to in the first cause of action.

It is further alleged that the defendant failed and refused to deliver the wheat or any part of it within a reasonable time, and that on the twelfth day of November, 1924, the plaintiff

demanded delivery thereof from the defendant, which was refused, and that prior to the commencement of the action the defendant had informed the plaintiff that he would not comply with said contract or deliver any wheat to the plaintiff thereunder; that by reason thereof the plaintiff has been damaged in the sum of $3,750; and that plaintiff has always been ready, able and willing to accept, receive and pay for said wheat, as provided in said contract.

The defendant filed a general demurrer to each cause of action set forth in the amended complaint, upon the ground that the same did not state facts sufficient to constitute a cause of action, which demurrrer was sustained. The plaintiff elected to stand upon his complaint, whereupon judgment was entered in favor of the defendant, and the plaintiff has appealed.

1. Section 7591, Revised Codes of 1921, provides: "No sale [1] of personal property, or agreement to buy or sell it for a price of two hundred dollars or more, is valid, unless: 1. The agreement or some note or memorandum thereof be in writing, and subscribed by the party to be charged, or by his agent," *etc.*

It is claimed by the defendant that the writing set out in the first cause of action is not a sufficient note or memorandum of the oral contract pleaded to take the same out of the operation of the above section, for the reasons: (1) That it does not properly or sufficiently describe the subject matter of the oral agreement. (2) That it contains no agreement to sell. (3) That it fails to indicate who is the buyer and who the seller. (4) That it is void for uncertainty, in that it cannot be determined therefrom whether the parties were acting for themselves or as agents for others, nor can it be determined therefrom what price was to be paid for the wheat, the time of payment for the same, or at what terminal the "weights, grades, and charges" are to be established for the purpose of fixing the price to be paid, and that for these reasons the complaint does not state a cause of action against him.

The argument of defendant's counsel on his first objection is that the wheat mentioned in the oral contract is not sufficiently identified in the written memorandum pleaded in the first cause of action.

The oral contract pleaded says that the defendant sold to the plaintiff 10,000 bushels of wheat then unthreshed and standing in stack on defendant's ranch near Gildford, which wheat defendant then represented to the plaintiff to be No. 1, dark northern spring, 14 protein wheat; while the memorandum calls for "10,000 bushels of No. 1 D. N. S. 14 protein wheat on track at Gildford, Montana."

In connection with this objection, it will be convenient to ascertain and set down some general rules which have been established relative to the sufficiency and interpretation of the note or memorandum contemplated by section 7591, *supra,* and also what oral evidence may be received and considered in connection therewith, as they will be found applicable to the defendant's remaining objections as well.

Upon one main proposition there seems to be a unanimity in judicial declaration, *viz.:* That, in order to take an oral contract for the sale of personal property out of the statute of frauds, the note or memorandum thereof must contain the essentials of the contract, so that they may be ascertained from the writing without a resort to oral evidence. (*Williams* v. *Morris,* 95 U. S. 444, 24 L. Ed. 360; 25 R. C. L., p. 649, sec. 276.) The foregoing rule is sufficiently complied with if all the material elements of the contract or agreement are stated in general terms in the note or memorandum; all the details or particulars need not be stated therein. (*Horton* v. *Wollner,* 71 Ala. 452; *Bayles* v. *Strong,* 104 App. Div. 153, 93 N. Y. Supp. 346; affirmed in 185 N. Y. 582, 78 N. E. 1099; *McCaffrey Bros.* v. *Hart-Williams Coal Co.,* 96 Neb. 774, 148 N. W. 966; *Wright* v. *Seattle Grocery Co.,* 105 Wash. 383, 177 Pac. 818.)

But these rules are not to be understood as requiring any [2] greater strictness in respect to the competency of the parol evidence to be applied to contracts within the statute than is applicable to written agreements in general. (*Tallman*

*v. Franklin,* 14 N. Y. 584.) Parol evidence may be admitted to show the situation and relation of the parties and the surrounding circumstances at the time the instrument was made.

Section 10521, Revised Codes of 1921, provides: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." (See *McCaull-Dinsmore Co.* v. *Stevens,* 59 Mont. 206, 194 Pac. 213; *National Cash Register Co.* v. *Wall,* 58 Mont. 60, 190 Pac. 135; *Gray* v. *Smith* (C. C.), 76 Fed. 525.)

Such evidence may likewise be admitted for the purpose of applying the description in the memorandum and thus identifying the subject matter of the contract, provided the subject matter is so described in the memorandum as to be capable of certain identification (*Barkemeyer Grain & S. Co.* v. *Hannant,* 66 Mont. 120, 213 Pac. 208, and cases cited therein; *Bacon* v. *Leslie,* 50 Kan. 494, 34 Am. St. Rep. 134, 31 Pac. 1066; *Preble* v. *Abrahams,* 88 Cal. 245, 22 Am. St. Rep. 301, 26 Pac. 99; *Hodges* v. *Kowing,* 58 Conn. 12, 7 L. R. A. 87, 18 Atl. 979; *Darnell* v. *Lafferty,* 113 Mo. App. 282, 88 S. W. 784), for, as stated in *Williams* v. *Morris, supra:* "Any note or memorandum in writing which furnishes evidence of a complete and practicable agreement is sufficient under the statute, and parol evidence is admissible to explain latent ambiguities, and to apply the instrument to the subject matter." Such testimony may also be used for the purpose of showing to what parties the writing applies. (*Riddle State Bank* v. *Link,* 78 Or. 498, 153 Pac. 1192.)

Manifestly, the expression "on track at Gildford, Montana," used in the memorandum, refers to the place of delivery, and is not intended to describe the place of location of the wheat therein referred to; but, if there were any doubt about this, under the authorities above cited it could be removed by parol [3] evidence identifying the subject matter. So also the meaning of the abbreviations, "No. 1 D. N. S.," appearing to have been used as descriptive of the wheat, could be ex-

plained by oral evidence showing their customary meaning in the business of dealing in wheat, for the purpose of enabling the court to interpret them. (Secs. 10521, 10522, Rev. Codes 1921; *Newell* v. *Nicholson,* 17 Mont. 389, 43 Pac. 180; *Berry* v. *Kowalsky,* 95 Cal. 134, 29 Am. St. Rep. 101, 30 Pac. 202.)

The defendant's first objection to the sufficiency of the memorandum is not well taken.

Defendant's second, third and fourth objections to the sufficiency of the memorandum may be considered together.

Under subdivision 12, section 10531, Revised Codes of 1921, [4] evidence may be given of "usage, to explain the true character of an act, contract, or instrument, where such true character is not otherwise plain."

In *Parham* v. *Chicago etc., Ry. Co.,* 57 Mont. 492, 189 Pac. 227, this court quoted with approval from 2 Elliott on Contracts: "Where there is an absence of clear stipulations in contracts, the usage may be proved to show the actual intent and purpose of the parties. General usage affecting any branch of business furnishes good evidence of what is regarded as right and reasonable in that respect." (Sec. 1706.) "Where there is nothing in a contract to exclude the inference, the parties will be presumed to have contracted in reference to customs and usages prevailing in the particular business and applicable to the contract in question. In other words, a custom or usage, consistent with the terms of the contract, peculiar to the subject matter thereof, known to the parties, and probably intended to be included in the contract, as shown by their situation and purposes, the nature of the subject matter, and the attendant circumstances, may be shown as an aid to the interpretation of a contract." (Sec. 1721.)

But it is the general rule that, where particular customs or usages relating to a particular locality or trade are relied upon, they must be pleaded by the parties seeking to make them a basis for recovery or defense. (*Gilbert* v. *Citizens' Nat. Bank, etc.,* 61 Okl. 112, L. R. A. 1917A, 740, 160 Pac. 635; 17 C. J. 516; 27 R. C. L., p. 195, sec. 40; 22 Ency. Pl. & Pr. 403.)

Referring to the allegations of the particular local customs
[5] and usages set out in the first cause of action, which are
said to have been well known to both parties to the transaction
and with reference to and in pursuance of which they dealt, it
cannot be doubted but that under the authorities it would be
competent for the plaintiff by oral testimony to ·prove such
customs and usages, and that they would be as binding upon the
parties as though specifically recited in the memorandum, and
thereby any uncertainty or ambiguity as to who was the buyer
or seller, the time of payment, the amount to be paid and the
method of determining this amount, would be removed.

For these reasons we are of opinion that the allegations of
the first cause of action are sufficient to entitle the plaintiff
to relief from the defendant, and the demurrer thereto should
have been overruled by the court:

2. The second cause of action in the complaint contains the
[6, 7] direct allegation of a written contract.

"The execution of a contract in writing, whether the law
requires it to be written or not, supersedes all the oral negotia-
tions or stipulations concerning its matter which preceded or
accompanied the execution of the instrument." (Sec. 7520,
Rev. Codes 1921.) Therefore, to ascertain what obligations the
defendant assumed by attaching his name to the instrument,
resort must be had to the written contract alone.

Where a contract of sale is executory, the price to be paid
must be definitely stated or made capable of definite determina-
tion. In *Price* v. *Stipek*, 39 Mont. 426, 104 Pac. 195, referring
to this subject, the court quoted with approval from 1 Parsons
on Contracts: "The price to be paid must be certain, or so
referred to a definite standard that it may be made certain."

The written instrument recites that the price to be paid is
[8] "subject to terminal weights, grades, and charges."
These items, therefore, constitute the factors for the determina-
tion of the amount which the seller was ultimately to receive
for his wheat. If plaintiff should weigh out and deliver to
defendant 10,000 bushels of wheat at Gildford, how many
bushels would he be paid for after it had been subjected to

"terminal weights?" At what terminal would it be weighed—Minneapolis, Duluth, Seattle or some other? By what standard would its grade be established? What "charges" would be made against it? These questions are not answered by the written instrument.

So much uncertainty is involved in the expression, "subject to terminal weights, grades, and charges," that we are unable to say that the price to be paid the defendant for the wheat mentioned in the written instrument is either "certain or so referred to a definite standard that it may be made certain," and consequently, in the absence of allegations of any local customs or usages such as are made in the first cause of action of the complaint, the contract is void for uncertainty.

For this reason the second cause of action set out in the complaint does not state facts sufficient to entitle the plaintiff to any relief from the defendant, and the court did not err in sustaining the demurrer to it.

The cause is remanded to the district court, with instructions to set aside the judgment so far as it relates to the first cause of action and to overrule the defendant's demurrer to this cause of action. Upon the second cause of action the judgment is affirmed. The appellant is entitled to his costs on appeal.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICE MATTHEWS concur.

JUSTICES HOLLOWAY and GALEN not sitting.