BULL CREEK OIL & GAS DEVELOPMENT, RESPONDENT,
*v.* BETHEL, APPELLANT.

No. 9171.
Submitted March 26, 1953. Decided June 2, 1953.
Rehearing denied July 29, 1953.
258 Pac. (2d) 960.

Messrs. Smith and Smith, Great Falls, for appellant.

Messrs. Swanberg and Swanberg, Great Falls, for respondent.

Mr. LaRue Smith, Jr., and Mr. Randall Swanberg argued orally.

MR. JUSTICE ANGSTMAN:

This action was brought to compel the specific performance of a contract of assignment of a federal oil and gas lease. Trial was to the court without a jury, resulting in judgment for plaintiff.

Defendant has appealed from the judgment. The complaint alleges in substance that E. V. Bethel in 1944 had, or claimed to have, certain oil and gas leases upon lands owned by the United States and applications for oil and gas leases on other federal lands in Blaine and Phillips Counties, Montana; that to obtain necessary funds to develop the property he requested a number of individuals to join him in forming an unincorporated association to be known as the Bull Creek Oil and Gas Development Company; this association was formed by the individuals who later became stockholders in plaintiff corporation; E. V. Bethel was appointed manager and went about obtaining subscriptions to obtain money to finance the development of the leases for oil and gas; money in excess of $2,175.47 was thus obtained from August 17, 1944, to the time of the incorporation of plaintiff which was spent upon the affairs of the company, as well as for E. V. Bethel's personal expenses; that in 1945, in order to more fully effectuate the purposes of the unincorporated association, and pursuant to the agreement of all concerned, the plaintiff corporation was duly formed; E. V. Bethel was one of the incorporators and one of the directors of the corporation and was appointed manager of the drilling operations which were then being conducted by the company on property represented by E. V. Bethel to be a portion of his holdings which were to be turned over to the corporation;

That on May 18, 1945, E. V. Bethel and his wife Ollie Bell made and delivered to plaintiff an agreement called a "Partial Assignment of Oil and Gas Lease, Serial No. 060158(b) Great Falls, Montana, Land Office," covering land specifically described, being the same land described in the complaint but which actually described land not included in lease No. 060185(b);

that the assignment was made in consideration of the issuance to E. V. Bethel of 100 shares of stock in plaintiff corporation, the payment of $600 cash, the assumption by plaintiff corporation of the payment of all rentals on the lease to be issued covering the land, and the appointment of E. V. Bethel as manager of the development operations on the lease; that thereafter plaintiff corporation advanced money to E. V. Bethel for such drilling and development; that E. V. Bethel was entrusted with the task of filing the assignment above referred to with the land office in Great Falls and with the department of interior, and he represented to plaintiff that the assignment had been taken care of; that on October 13, 1946, E. V. Bethel died intestate and Ollie Bell Bethel was appointed administratrix of his estate; that on September 1, 1947, an oil and gas lease was issued by the Federal Government on the lands described in the complaint to Ollie Bell Bethel, as administratrix, and delivered to her and she is now in possession thereof; that plaintiff discovered for the first time after the death of E. V. Bethel that he had not completely filed the assignment with the department of interior; that plaintiff requested of defendant that she supply another assignment so that plaintiff could become the owner thereof but she has failed and refused to do so; that after the date of the partial assignment above referred to plaintiff has paid all of the rental falling due upon the application or upon the lease thereafter issued pursuant to its terms, and has done all of the things required by it to be done under the assignment; that plaintiff is ready, willing and able to make any payments now required of it under the terms of the agreement or that the court might find it should pay and stands ready to pay any rentals due or to become due under the lease; that plaintiff has no adequate remedy at law.

The prayer of the complaint is that defendant be required to assign and transfer the lease to plaintiff.

To the complaint, and made a part of it, was attached a copy of the partial assignment made on May 18, 1945, marked exhibit A.

The answer was a general denial. Defendant contends that the

██ decree of the court went beyond the issues raised by the pleadings and proof and in legal effect rewrote the contract between the parties.

The record discloses that there were three leases involved covering the land described in the complaint. One was No. 060158(a) issued to Phillips Development Company in 1937, and assigned to Bethel in 1941, which covered only a part of the land described in the complaint; the second was lease No. 060158(b), covering some of the land described in the complaint and other lands not here involved, which was also issued to Phillips Development Company in 1937 and assigned to Bethel in 1941, only so far as it affects 80 acres of the land described in the complaint. The third was lease No. 085443, overlapping the others on some of the land, which covered the rest of the land described in the complaint. It is the contention of defendant that the complaint seeks only an assignment of Bethel's interest in lease No. 060158(b). The court, however, found that plaintiff is entitled to an assignment of leases covering all the lands described in the complaint and in exhibit A.

The complaint is not a model for clarity and exhibit A which is made a part of the complaint is not much better. May the complaint be construed as seeking an assignment of more than the 80 acres embraced in lease No. 060158(b) which had been assigned to Bethel?

The complaint alleges that after the incorporation of plaintiff, Bethel was appointed manager of the drilling operations then being conducted by the company on land described in the complaint, "and which had been represented by Dr. E. V. Bethel as being a portion of his holdings, which were to be turned over to the corporation." The complaint contains this allegation: "That subsequent to the incorporation of plaintiff herein, and on or about the 18th day of May, 1945, the said Dr. E. V. Bethel and Ollie Bell Bethel, his wife, made, executed and delivered to plaintiff herein a certain agreement designated 'Partial assignment of oil and gas lease, serial No. 060158(b), Great Falls, Montana, Land Office,' by the terms of which said agreement,

the said Dr. E. V. Bethel and Ollie Bell Bethel, his wife, agreed to transfer and assign to plaintiff herein, and did assign, certain portions of an oil and gas lease, later to be issued by the United States Government, on premises covered at said time by an application previously filed by the said Dr. E. V. Bethel, for such oil and gas lease, more particularly described as follows * * *.'' Here follows a description of all the land included in the three leases numbered 060158(a), 060158(b) and 085443 which had been assigned to Bethel.

Does exhibit A attached to the complaint limit plaintiff to an assignment of Bethel's interest in lease No. 060158(b)? That exhibit is called ''Partial assignment of oil and gas lease, serial No. 060158(b), Great Falls, Montana, Land Office.'' The body of the instrument likewise assumes to assign to plaintiff ''that certain oil and gas lease, Great Falls, Montana, Land office, Serial No. 060158(b) * * * in so far only as said oil and gas lease covers and includes or *shall cover and include,* the certain subdivisions of land described as follows: (Here follows description of all the land as described in the complaint.)''

By that paragraph of the exhibit it seems to have been intended by the parties that the lease to be assigned, at least as to a part of the land, had not yet been issued. Lease No. 060158(b) had already been issued and if it were intended to confine the assignment to that lease alone there would have been no occasion to refer to land to be covered by lease after the date of exhibit A. It seems to us that exhibit A is sufficiently broad to call for an assignment by Bethel of his interest in all the land therein described. This result is fortified by the circumstances that the wife of Dr. Bethel relinquished her rights in exhibit A in the following language: ''* * * do hereby release, relinquish, and quit claim unto and in favor of the said Party of the Second Part hereto, its successors and assigns, all my right and dower and homestead in and to the hereinabove described land to the extent of the rights and interest therein described and conveyed unto said Party of the Second Part.''

Defendant points out that exhibit A makes it incumbent upon

plaintiff to pay to the Phillips Development Company a two and a half per cent royalty which is the royalty provided by lease No. 060158(b), but makes no provision for the payment of a seven and a half per cent royalty which is the royalty provided for in lease No. 060158(a). It should be noted that exhibit A also provides that plaintiff shall timely and faithfully pay "all of the obligations, terms, and undertakings assumed by or imposed upon parties of the first part [the Bethels] by and under the terms of said oil and gas lease, and to pay created or overriding royalties on all of the oil and gas products of said land upon parties of the first part." That paragraph is sufficiently broad to cover the obligation to pay seven and a half per cent royalty on lease No. 060158(a).

While exhibit A is not as clear as it might have been, it is our view that when it is construed in the light of its purpose and the surrounding circumstances at the time it was made. the court was warranted in finding that it called for a transfer of the interest of Bethel and his wife to all the land described in it.

In reaching this conclusion we keep in mind the rule of statutory construction that when the terms of a promise are ambiguous or uncertain, it must be interpreted in the sense in which the promisor believes at the time of making it, that the promisee understood it, R. C. M. 1947, sec. 13-715, and that it should be interpreted most strongly against the party who caused the uncertainty to exist and that the promisor is presumed to be such party. R. C. M. 1947, sec. 13-720.

The record reveals that Dr. Bethel was one of the organizers of plaintiff corporation. He solicited money from contributors to carry out the drilling operations on the land which was to go to the corporation. The contributors had no knowledge of the numbers given to different leases whereas Dr. Bethel was engaged in acquiring interests in government leases and did have such knowledge. Had it been intended that only the 80 acres assigned to Bethel under lease No. 060158(b) was intended to go to plaintiff, it is inconceivable why the other land was described in the exhibit.

The minutes of the meeting of the board of directors dated April 26, 1945, show that a block of 23,800 shares of stock is to become the property of Dr. Bethel "in consideration of the transfer by the said Dr. E. V. Bethel of leases in and to the property upon which a test well is now being drilled." They also show the following: "On motion duly made and carried the treasurer was authorized and directed to advance to Dr. E. V. Bethel the sum of $200.00 to cover expenses to Great Falls, Montana, and to pay all Federal filing fees to properly affect transfers to the Corporation of *all Government leases* to which the Corporation is to be the owner and to pay the expenses of W. C. Mumford to accompany Dr. E. V. Bethel on said trip, the said Dr. E. V. Bethel and W. C. Mumford being named as a Committee for the purpose stated."

By stipulation of the parties, lease No. 085443 was introduced in evidence subject to all objections that either may make to its admissibility. The record does not show that any objection was made to the admissibility of this lease. It was further stipulated that if the records of the National Surety Company of New York, and its agents in Montana, Taylor Tipling & Company of Helena, were introduced in evidence, they would show that a surety bond was issued to E. V. Bethel in the sum of $5,000 to assure compliance with the terms of a certain oil and gas lease, "Serial number 060158(a) and (b)." Lease No. 060158(a) was introduced in evidence by defendant. Likewise evidence went in without objection that demand was made upon defendant Ollie Bell Bethel that she assign lease No. 085443 to plaintiff.

The case was tried as if all three leases were involved and on the theory that an assignment of all the land described in the complaint was properly before the court, and under such circumstances if the complaint is not broad enough to actually present to the court for consideration the status of all the land described, under well established rules, it will be deemed amended to conform to the proof.

Defendant next contends that plaintiff is not entitled to specific performance of the contract because specific per-

formance is not available to defendant and hence there is lacking mutuality of remedy. She relies on R. C. M. 1947, sec. 17-803, reading: "Neither party to any obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely, or nearly so, together with full compensation for any want of entire performance" and on Templeton v. Willard, 83 Mont. 317, 272 Pac. 522.

There is no question about the soundness of the rule. The point of difference centers around its applicability. The Templeton Case is distinguishable from this because, as was pointed out in the opinion in that case, the agreement there involved, containing a surrender clause as it did, made it possible for plaintiff to nullify any decree that might be made in favor of defendant for the specific performance of the contract and for that reason there was lacking mutuality of remedy by specific performance.

Here plaintiff has already done everything required of it under the contract except to issue and deliver the certificates of stock to defendant, and this can be specifically enforced.

Defendant next contends that defendant and E. V. Bethel ▮▮▮ have already done everything under the contract which they were required to do; that they executed and delivered the written assignment, exhibit A, and that there is nothing further for them to do in this connection.

Under the assignment, exhibit A, it was plaintiff's duty to cause it to be submitted to the secretary of the interior for approval. The evidence shows that Bethel was the manager of plaintiff corporation and that he was entrusted with the task of securing the approval of the assignment by the secretary of the interior; Mumford was sent to Great Falls with Dr. Bethel to assist in the matter; Bethel employed attorney Randall Swanberg to help him; Swanberg filed the assignment in the Great Falls land office; Bethel told Mr. Swanberg to hold up going further with the matter. The evidence shows that it was the in-

structions from Bethel that caused Swanberg not to go ahead with the matter of obtaining federal approval of the assignment.

Defendant contends that the record fails to show that plaintiff has performed its obligations under the assignment. It is alleged in the complaint that part of the consideration for the assignment was the payment of $600. There was evidence of the payment of two checks, one in the sum of $400 and the other in the sum of $200. The record shows that most, if not all, of this money was used to pay expenses of Dr. Bethel in promoting the development of the company property. This does not negative the idea that it still constituted a part of the consideration for the assignment.

Another obligation which plaintiff assumed as part of the consideration for the assignment was the duty of paying all rentals on the lease to be issued. The evidence shows payment for the years 1945 to 1949, inclusive, on lease No. 060158(b) but there is no evidence of payment for any years after 1949 for that lease or any rental for lease No. 060158(a). Plaintiff takes the position that since it paid the rental up to the time this action was commenced it was justified in withholding further payments until the action is concluded. As to payments for lease No. 060158(a), it is sufficient to say that all of the land described in the complaint was included in lease No. 085443, including that covered by lease No. 060158(a). There was evidence that plaintiff furnished the money for payment of the rental on lease No. 085443, although the receipt for the rental was issued to Bethel.

Defendant contends that the duty of plaintiff to pay the premiums on bonds required on federal oil and gas lease No. 060158(b) was not shown to have been carried out. The record does not support this contention.

Defendant contends that the obligation to issue and deliver shares of stock to Bethel has not been discharged. The record shows that the stock has been issued but not delivered. Plaintiff stands ready to deliver the stock at any time that defendant will accept it, and plaintiff's right to the relief sought and granted

cannot be defeated by defendant's failure to demand and receive the shares of stock.

Defendant contends that since the record shows the par value of plaintiff's stock to be $100 per share and since the subscribers were to obtain it at 20 cents per share, the proposed stock issue is illegal and void under section 10, Article XV of the Constitution, reading: "No corporation shall issue stocks or bonds, except for labor done, services performed, or money and property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock of corporations shall not be increased except in pursuance of general law, nor without the consent of the persons holding a majority of the stock first obtained at a meeting held after at least thirty days notice given in pursuance of law." So far as E. V. Bethel was concerned he was to receive the shares of stock for property which he was to assign to plaintiff. The record does not show that the property was not worth the value of the shares of stock. If shares of stock were issued to others contrary to this constitutional provision, and this we do not decide, it would not affect the validity of those issued or to be issued and delivered to Bethel or his heirs.

Defendant contends that since this action was not commenced until two years and eleven months after the death of E. V. Bethel, and four years and four months after the execution and delivery of the assignment, plaintiff has been guilty of laches. It does not appear that this question was presented in the trial court by answer, demurrer or otherwise. The rule is that it may not be presented for the first time on appeal. 19 Am. Jur., Equity, sec. 514, p. 357.

Were the question properly before us, we would not sustain defendant's contention. There is no showing here that defendant did not know that plaintiff would assert the right on which the action is based which is one of the essential facts that must appear before the doctrine may be relied on. 19 Am. Jur., Equity, sec. 498, pp. 343, 344. Likewise there is no showing of prejudice to defendant by reason of the delay in instituting the action. True, Dr. Bethel has since died, but the absence of his testimony

would have existed had the action been brought two years and ten months sooner.

Likewise it was not until after the death of Dr. Bethel that plaintiff learned the assignment had not been approved by the federal authorities.

Finding no reversible error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANDERSON, concur.