MR. DONALD H. STEEN, Plaintiff and Respondent, v. HUBERT E. RUSTAD and EVELYN T. RUSTAD, Husband and Wife, Defendants and Appellants.

No. 9873.

Submitted April 30, 1957. Decided August 1, 1957.

Rehearing Denied August 19, 1957.

313 Pac. (2d) 1014.

98

Mr. George J. Allen, Livingston, Messrs. Leavitt & Lucas, Miles City, and Mr. Ralph J. Anderson, Helena, for appellants.

Messrs. Young, Martin & Young, Baker, for respondent.

Mr. Anderson and Mr. Arthur B. Martin argued orally.

MR. CHIEF JUSTICE HARRISON:

On November 2, 1950, defendants and plaintiff made and executed a certain agreement entitled "Lease With Option to Buy—Agreement" describing certain lands owned by the defendants which covered the farming year of 1951. As a part of its terms the agreement provided:

"In consideration of the foregoing premises, tenant agrees to pay the landlord under one of the following plans:

"Plan No. 1. Tenant shall deliver on or before Nov. 1, 1951, one-third of the wheat so raised to the landlord at the nearest accessible grain elevator, such payments to constitute rental for the year 1951.

"Plan No. 2. Tenant shall pay on or before Nov. 1, 1951, $1,500.00 to the landlord. In the event 'Plan No. 2' is chosen by tenant, tenant shall notify landlord prior to said date of his choice, and such payment shall then constitute rental of the

land for year 1951, and further, shall constitute a down payment upon a contract for sale of said land, which contract shall be drawn up at that time and contain the following which shall be a memorandum of said contract:

" 'Memorandum'

"Landlord agrees to sell and tenant agrees to buy, the land hereinbefore described for the sum of $8,500.00. The sum of $1,500.00 shall constitute a down payment, as hereinbefore set forth. The balance of $7,000.00 may thereafter be paid by tenant by delivering unto the landlord two-thirds of the crop raised each year, and the market value of the crop share going to landlord shall constitute the payment due and owing on the contract for that year.

"The foregoing paragraph shall constitute the minimum provisions under which tenant may exercise his option to buy, but it is understood that parties may mutually agree to other terms as to the payment of the balance.

"It Is Further Understood and Agreed that in the event that the tenant is called into the military services of the United States before he exercises his option to buy then the tenant cannot exercise said option and the landlord shall not be bound by tenant's option to buy. However, plan No. 1 shall then be in full force and effect, and the parties bound thereby.

"The landlord under the contract of sale shall be bound to furnish an abstract of title, showing good and merchantable title to said land."

In the above-quoted portions of the agreement the defendants are referred to as the landlord, the plaintiff as the tenant.

Under this agreement plaintiff went into possession and farmed the premises. Following harvest in the fall of 1951 the plaintiff went to see the defendant, Hubert E. Rustad, at Livingston, Montana, where he was then residing, and advised him that he was ready to finish the deal and make the payment, but the defendant, Hubert E. Rustad, advised that he wouldn't sell and let the mineral rights go, but if the plaintiff wanted to buy without the minerals he could have the land.

In this conversation plaintiff offered to pay the $1,500 down payment, but it was refused. The defendant, Hubert E. Rustad, admits that the only matter brought up in this conversation was reservation of the minerals.

Thereafter under date of September 27, 1951, by registered mail, the plaintiff sent a letter to the defendant, Hubert E. Rustad, which reads as follows:

"According to our agreement by which you leased me with option to buy the North half of Section 14, Township 9, Range 60, I now wish to notify you that I wish to exercise the option to buy, as set forth in Plan No. 2.

"We should have a contract drawn up, which will set forth the essential features stated in the memorandum. I wish to make the $1,500.00 down payment at this time, and wish to know whether I should forward it directly to you or deposit to your credit in one of the banks here at Baker. The contract itself should provide for that.

"If you will have a contract prepared which is in line with our previous agreement, and will forward it to me, I shall sign and return your copy to you."

Receiving no reply to this letter, the plaintiff on October 18, 1951, wrote the defendant, Hubert E. Rustad, as follows:

"Inasmuch as I have had no reply to my letter of Sept. 27, 1951, asking where to make payment on our contract or a new contract which I also asked for, by which I'm to buy the North half of Section 14, Township 9, Range 60, I have deposited the $1,500.00 set forth as down payment to your credit here in The Bank of Baker, Baker, Montana. Please give me a reply."

The defendant, Hubert E. Rustad, admitted that he received a letter from the bank with regard to the deposit of $1,500.00 paid by the plaintiff and defendant stated he later refused to accept the payment, but admits that the bank took $508.22 from his account to pay a note of his. Defendants never did anything toward having the contract prepared.

The situation with regard to the bank account of the defendant, Hubert E. Rustad, indicates that on October 19, 1951, $1,-

500.00 was deposited to his credit; on October 24, 1951, $508.22 was withdrawn by the bank apparently without defendant's knowledge to pay a note which defendant had at the bank; on November 19, 1951, $1,000 was withdrawn by the defendant which then left a balance of $177.37. Thereafter a service charge of 46 cents was deducted from the account on December 7, 1951, leaving a balance then of $176.91. On December 27, 1951, a deposit of $1,429.40 was made and the defendant, Hubert E. Rustad, testified this was money paid upon another land contract in escrow that was deposited in the bank to his credit. Plaintiff tendered into court $540 covering two-thirds of the crop raised in the year 1952.

Plaintiff brought this action for specific performance of the agreement. Defendants answered and by cross-complaint demanded an accounting of the rents payable for the use of the lands for the year 1951 under the lease. The action was tried to the court without a jury; the court found that the agreement was a valid and subsisting contract; that the defendants accepted the down payment; that the unpaid balance was $6,460; and that plaintiff was entitled to a decree of specific performance. Judgment was entered in accordance with the findings.

From such judgment the defendants appeal and by specifications of error contend that the complaint did not state facts sufficient to constitute a cause of action, and that the court could not compel specific performance of the agreement.

Although the defendants set forth nine specifications of error they may be grouped under three headings: (1) That the plaintiff was not granted an exclusive option, his right to buy being conditioned upon defendants' prior decision to sell; (2) That the agreement was merely an agreement to entered into an agreement in the future, and that the agreement lacked certainty; (3) That the agreement lacked mutuality as required by R.C.M. 1947, section 17-803, and was unenforceable as calling for the performance of personal services under R.C.M. 1947, section 17-807, subd. 1.

Was the plaintiff granted an exclusive option to buy or was

■■ *it* conditioned first upon defendants' decision to sell? Defendants' contention that plaintiff was not, rests upon the following words in the contract: "Landlord hereby agrees to let and lease unto the tenant, and give the tenant a *first option to buy.*" Emphasis supplied. In arguing that the words as set out give plaintiff only the first opportunity to buy if defendants wish to sell, defendants rely upon certain definitions of the words "first option to buy" in Vol. 17, Words and Phrases, Cumulative Pocket Part. While those authorities cited in that notable work may be relied upon in some instances, suffice it to say they are inapplicable in the present case. It is well established that a court, in interpreting a written instrument, will not isolate certain phrases of that instrument in order to garner the intent of the parties, but will grasp the instrument by its four corners and in the light of the entire instrument, ascertain the paramount and guiding intention of the parties. Mere isolated tracts, clauses and words will not be allowed to prevail over the general language utilized in the instrument. R.C.M. 1947, section 13-707; Snider v. Carmichael, 102 Mont. 387, 58 Pac. (2d) 1004; Johannes v. Dwire, 94 Mont. 590, 23 Pac. (2d) 971; Lee v. Gold Mining Co., 71 Mont. 592, 230 Pac. 1091.

If the following language in the lease is examined in the ■ light of the above rule of construction the paramount intent of the parties becomes immediately apparent:

"In the event 'Plan No. 2' is chosen by tenant, tenant shall notify landlord prior to said date of his choice, and such payment shall then constitute rental of the land for year 1951, and further, shall constitute a down payment upon a contract for sale of said land * * *

"Landlord agrees to sell and tenant agrees to buy the land hereinbefore described for the sum of $8,500.00. * * *

"The foregoing paragraph shall constitute the minimum provisions under which tenant may exercise his option to buy * * *

"It Is Further Understood and Agreed, that in the event that the tenant is called into the military services of the United

States before he exercises his *option to buy,* then the tenant cannot exercise said option and the landlord shall not be bound by tenant's *option to buy.*" Emphasis supplied.

Nowhere in the above-quoted language does the term "first option to buy" appear. On the contrary the entire language of the agreement tends toward only one interpretation; that the plaintiff was given an exclusive option to buy the property described under the lease; that his method of exercising his option was by tendering $1,500.00 to the defendant, as called for by "Plan No. 2."

For a case strikingly similar, both on the facts and question of law involved, see Roth v. Snider, 25 Wash. (2d) 514, 171 Pac. (2d) 819, 82 where that court held the words "first option to purchase," in the light of the other language in the contract, gave the plaintiffs an exclusive option to purchase the land in question.

It has been well-settled that an option to purchase will be specifically enforced. Brubaker v. D'Orazi, 120 Mont. 22, 179 Pac. (2d) 538; McLaren Gold Min. Co. v. Morton, 124 Mont. 382, 224 Pac. (2d) 97. In the latter case on page 393 of 124 Mont. on page 980 of 224 Pac. (2d), the court citing from 3 Lindley on Mines (3d ed.), section 859, pages 2123-27, said: " 'An option to buy or sell land, more than any other form of contract, contemplates a specific performance of its terms; and it is the right to have them specifically enforced that imparts to them their usefulness and value'." However, it should be added that specific enforcement of options to purchase is governed by the same rules as are applicable to specific enforcement of contracts generally. 81 C.J.S. Specific Performance, section 31, pages 479, 485; 49 Am. Jur., Specific Performance, section 120, pages 141, 142.

Thus the court is faced with the main controversy involved in this appeal, whether or not the "Lease with Option to Buy— Agreement" which is involved in this case, comes within the scope of those cases granting specific performance.

Examining defendants' second argument, as set out above,

██ we are faced with the proposition of deciding whether the parties had actually intended to set down the essential elements of a contract for the purchase and sale of realty, or whether the instrument was merely an agreement to enter into a contract for the purchase and sale of realty in the future. If the latter was the true intent of the parties it is well-settled that equity will not enforce such an agreement. Dineen v. Sullivan, 123 Mont. 195, 203, 213 Pac. (2d) 241; Reeves v. Littlefield, 101 Mont. 482, 54 Pac. (2d) 879; Monahan v. Allen, 47 Mont. 75, 130 Pac. 768. Whereas it is equally well-settled that if the parties intended the present instrument to be a binding contract on exercise of the option, and intended only to incorporate it into a more formal contract in the future, then (assuming it has all the other requisites of enforceable contracts) equity will grant specific performance of the less formal instrument. Long v. Needham, 37 Mont. 408, 96 Pac. 731; Monahan v. Allen, supra; Pomeroy's Specific Performance of Contracts, (3d ed.), section 86, pages 208, 210; 81 C.J.S. Specific Performance, section 35, pages 494, 496.

In the case of Monahan v. Allen, supra, the court illustrated the above rules by quoting from Shepard v. Carpenter, 54 Minn. 153, 55 N.W. 906, wherein it was said:

"A contract between two persons, upon a valid consideration, that they will, at some specified time in the future, at the election of one of them, enter into a particular contract, specifying its terms, is undoubtedly binding * * *. But an agreement that they will in the future make such contract as they may then agree upon amounts to nothing. An agreement to enter into negotiations and agree upon the terms of a contract, if they can, cannot be made the basis of a cause of action." [47 Mont. 75, 130 Pac. 771].

The same doctrine is enunciated in Long v. Needham, supra, 37 Mont. at page 423, 96 Pac. at page 735, where Mr. Justice Holloway citing from 5 Current Law, pages 665, 666, stated:

" 'It is not necessary, in order to make a written contract, that the terms thereof be reduced to writing in a formal way on

one piece of paper, but it is sufficient if a written offer by or on behalf of one party is accepted by or on behalf of the other, and the language used shows a meeting of the minds on some particular subject-matter. * * * An agreement to contract is, of course, not a final contract because something is left open. Thus, where the parties make the reduction of the contract to writing and its signature by them a condition precedent to its completion, it will not be a contract until it is reduced to writing and signed. But, where they assent to all of its terms, the mere reference to a future contract in writing will not negative the existence of a present and completed one'.''

Defendants in support of their contention quote the following language from the lease: "In the event 'Plan No. 2' is chosen by tenant, tenant shall notify landlord prior to said date of his choice, and such payment shall then constitute rental of the land for year 1951, and further, shall constitute a down payment upon a contract for sale of said land, which contract shall be drawn up at that time and contain the following which shall be a memorandum of said contract.'' The words ''which contract shall be drawn up at that time and contain the following'' are purportedly the significant ones. However in the light of the rules as set out in Long v. Needham, supra, and Monahan v. Allen, supra, it is apparent that the parties had agreed, one of them to sell and the other to buy the property described in the lease; that a valid offer of sale was contemplated under ''Plan No. 2,'' and the memorandum thereunder, which only required the acceptance of the plaintiff to transform it into a validity enforceable contract. Further, the reference to a contract to be drawn up in the future was referring only to a formal contract not a future agreement of the parties, for the parties had already agreed what the contract would contain as indicated by the words, ''and contain the following.'' The ''following'' and what had gone before constituted the contract, not the more formal instrument which would incorporate the agreement already entered into.

However the defendants contend that the contract was in-

106

complete and uncertain in its terms under the provisions of R.C.M. 1947, section 17-807, subd. 6, which declares the following contracts unenforceable. "6. An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable." It is of course well-settled that a contract to be specifically enforceable must be complete and certain in all essential matters included within its scope. Nothing must be left to conjecture or surmise, or be so vague as to make it impossible for the court to glean the intent of the parties from the instrument, or the acts sought to be enforced. Dineen v. Sullivan, supra; Reeves v. Littlefield, supra; Monahan v. Allen, supra; Long v. Needham, supra.

It is equally well-settled that absolute certainty and completeness in every detail is not a prerequisite of specific performance, only reasonable certainty and completeness being required. Those matters which are merely subsidiary, collateral, or which go to the performance of the contract are not essential, and therefore need not be expressed in the informal agreement. Johnson v. Elliot, 123 Mont. 597, 218 Pac. (2d) 703; Dineen v. Sullivan, supra; Lewis v. Aronow, 77 Mont. 348, 251 Pac. 146; Long v. Needham, supra; Edwards v. Tobin, 132 Or. 38, 284 Pac. 562; Slade v. City of Lexington, 141 Ky. 214, 132 S.W. 404; Ruzicka v. Hotovy, 72 Neb. 589, 101 N.W. 328; Trotter v. Lewis, 185 Md. 528, 45 A. (2d) 329; Kleinschmidt v. Central Trust Co., 103 Or. 124, 203 Pac. 598; Boro v. Ruzich, 58 Cal. App. (2d) 535, 137 Pac. (2d) 51; 81 C.J.S. Specific Performance, section 31, pages 479, 483.

It is also universally held that cases like the present one rest upon their own peculiar facts and circumstances. Rarely do we find one case identical to another, or so fashioned in fact and law, that we can say one is on all fours with another. Therefore we find equity giving relief in one situation and denying it in another where the facts seem to be, but are not, quite identical.

The Montana cases of Long v. Needham, supra, and Reeves v. Littlefield, supra, illustrate the proposition that each controversy must be bottomed on its own facts and circumstances.

This court, although guided by precedent, will not be bound thereby since each case presents its own peculiar problem. Therefore, in arriving at a just result, we will not be guided by any one case, but rather will interpret the facts of this case in the light of the many cases which have already been decided.

In the present case the agreement was this: Defendants gave ▮▮▮▮▮▮▮ plaintiff an exclusive option to purchase the land under the existing lease for $8,500; plaintiff's method of exercising the option was to pay defendants $1,500 before November 1, 1951. That sum would constitute the down payment on the property. The payment of the balance was provided for by the plaintiff delivering to the defendants two thirds of the crop raised each year, such crop share to cover the payment due and owing on the contract for that year. It was further provided that the plaintiff was to summer fallow forty-five acres of land during the year 1951. The defendant stressed the fact that there was no mention of taxes, interest, security, acreage to be planted or time of performance. However there are many cases holding that these are all collateral matters which are not essential to the validity of the contract. Johnson v. Elliot, supra, states that where no time of payment is provided for, the law implies that payment will be made within a reasonable time or upon demand. See, also, Hall v. Lommasson, 113 Mont. 272, 124 Pac. (2d) 694; Johnson v. Jones, 109 Utah 92, 164 Pac. (2d) 893; Droesch Homes v. Pietros, 185 Misc. 714, 56 N.Y.S. (2d) 718; Pollak v. Dapper, 219 App. Div. 455, 220 N.Y.S. 104; Mahanay v. Lynde, 48 Cal. App. (2d) 79, 119 Pac. (2d) 430; Thomas v. Johnson, 55 Utah 424, 186 Pac. 437; Slade v. City of Lexington, supra; Schafer v. Faylor, 74 Ohio App. 533, 60 N.E. (2d) 339; Ruzicka v. Hotovy, supra.

Thus, though the items pointed out by the defendants be absent from the agreement, a court of equity will still give relief if, from the contract as it stands, the essentials are stipulated.

The defendants also rely on the language in the memorandum which states: ''The foregoing paragraph shall constitute the minimum provisions under which tenant may exercise his option

to buy, but it is understood that parties may mutually agree to other terms as to the payment of the balance.'' Defendants contend that this language indisputably points out that the parties intended the contract to be incomplete, and that other terms and conditions might be agreed upon. But defendants overlook that it states the ''foregoing paragraph shall constitute the *minimum provisions* under which tenant may exercise his option.'' Emphasis supplied. The parties impliedly agreed that if no amicable concord could be arrived at, then nevertheless the parties were bound by the ''minimum provisions.''

At the trial of the action, the defendant, Hubert E. Rustad ▮▮▮▮ testified that when the parties had signed the contract, there was only one item mentioned which the parties would agree to on a subsequent formal agreement, and that item was the interest rate; nothing else was discussed with regard to changing the existing memorandum and lease provisions. It is apparent the only reason defendants now contend that the contract is incomplete and uncertain is the fact the land covered by the lease is now in an oil development area; that the mineral rights have taken on a new value. If reservation of the minerals had been intended to be included in the contract, that would have been provided for. It is evident that thought only occurred to defendants when the value of the mineral rights increased. The defendants now attempt to throw up a wall of specious legal arguments for this court to surmount, when it is apparent from the evidence and testimony adduced at the trial the only reason they had for refusing to be bound by the lease and memorandum was the new value attributed to the mineral estate.

In Long v. Needham, supra, 37 Mont. at page 420, 96 Pac. at page 735, the court quoted approvingly from Turner v. McCormick, 56 W. Va. 161, 49 S.E. 28, 107 Am. St. Rep. 904, wherein that court stated:

'' 'Property rights are sacred and should be well guarded by the law; but, when a man has deliberately made a fair contract of sale, he ought not to be permitted to avoid it on some flimsy pretext in order to avail himself of a better bargain'.''

Defendants' next argument that the contract lacks mutuality ▮▮▮ is without merit upon the authority of McLaren Gold Mines Co. v. Morton, supra; Bull Creek Oil & Gas Development v. Bethel, 127 Mont. 222, 258 Pac. (2d) 960; Brubaker v. D'-Orazi, supra; Hogan v. Thrasher, 72 Mont. 318, 233 Pac. 607.

Finally defendants maintain that the contract in this case is ▮▮▮ unenforceable because it comes within the proscription of R.C.M. 1947, section 17-807, subd. 1. They contend that since the balance of the purchase price is to be paid out of two-thirds of each year's grain crop, then they must rely upon plaintiff's personal service for that balance. Although the courts are adamant in refusing specific performance to contracts which require the court's supervision of protracted personal service relationships, that rule is not applicable in this case. What the defendants contracted for was a sale of their property, not the personal services of the plaintiff. The thing looked to for compensation is not the personal services of plaintiff, but rather the purchase price, as measured by two-thirds of the crop. California has a statute identical to section 17-807, subd. 1, in their Civil Code, which is section 3390. Although they have always refused to enforce personal service contracts under the statute, they have also distinguished between contracts which actually called for personal services and those which appearing to, do not.

In George v. Weston, 26 Cal. App. (2d) 256, 265, 267, 79 Pac. (2d) 110, 115, the court was faced with the problem of enforcing an agreement of defendants to lease plaintiff certain lands for the drilling and development thereof for oil and gas. The court refused to grant specific performance on the same grounds this court refused it in Templeton v. Williard, 83 Mont. 317, 272 Pac. 522, namely, lack of mutuality in that the lessee would have the option to terminate the lease upon the tender of $1. However, in holding the agreement did not call for the performance of personal service on the part of the plaintiff, the California Court said:

"Respondents, as has been seen, also claim that the proposed lease undertakes to obligate appellant to perform personal serv-

ices and, since this performance cannot be decreed, that it, in that respect also, lacks mutuality, citing, *inter alia*, Los Angeles [& Bakersfield Oil & Development] Co. [of Arizona] v. Occidental Oil Co., 144 Cal. 528, 78 Pac. 25. In this contention respondent is on less solid ground. In Los Angeles [& Bakersfield Oil & Development] Co. [of Arizona] v. Occidental Oil Co. mutuality was, indeed, held to be, for this reason, absent, but there the personal services to be rendered by one Martin, including his obligation personally to see to organizing a proposed corporation for the contemplated exploitation, as well as to see that various rights were gotten together and vested in it, were involved. In the insant case the agreement runs not only to plaintiff but to his heirs and assigns so that it is clear that there is no question of a requirement of the personal services of any particular individual. Neither do we think the respondent right in claiming that the specific performance sought is of a succession of different acts. It is of one act—the act of executing a lease in the agreed form."

Although the court pointed out in the George case that the lease ran to heirs and assigns, the case was further distinguished on the grounds that only execution of the lease was contemplated, not the drilling of the well. See, also, Gersick v. Shilling, 97 Cal. App. (2d) 641, 218 Pac. (2d) 583; Harms v. Reed, 73 Cal. App. (2d) 853, 167 Pac. (2d) 747.

The Texas court in Capps v. Joiner, Tex. Civ. App. 1934, 69 S.W. (2d) 853, 856, in granting specific performance of an agreement almost identical to that in the George case, held that the general rule of denying specific performance to personal service contracts did not automatically encompass every contract or lease covering oil and gas lands. They held:

"* * * the contract here under consideration was [not] entered into with the particular intent and purpose of obtaining in actual performance the personal services of the obligated parties. We are not of the opinion that such a contract is in its nature alone necessarily a contract for performance of personal service on the part of the contractor, and is not for

such reason a contract which a court of equity would under any and all circumstances refuse to enforce performance."

Therefore this court is of the opinion that the instant contract does not call for the performance of personal services.

We have examined the remainder of defendants' arguments and find them without merit.

The judgment is affirmed with costs to the respondent.

MR. JUSTICES CASTLES, BOTTOMLY and ANGSTMAN, concur.

MR. JUSTICE ADAIR:

I concur in the affirmance of the district court's judgment, but not in all that is said in the foregoing opinion.